[Crim. Nos. 308 and 358.   In Bank.—December 8, 1897.]

THE PEOPLE, Respondent, v. WILLIAM HENRY THEO-
DORE DURRANT, Appellant.

CRIMINAL LAW—APPEAL—CONFESSION OF ERRORS—IMMEDIATE DECISION—CAL-
ENDAR AND ARGUMENT UNNECESSARY.—A criminal cause in which the at-
torney general has confessed error, so as necessarily to involve the
granting to the defendant appealing of all the relief which he seeks
by his appeal, will be decided immediately, and it is unnecessary
that the cause should be placed upon the calendar, after the reg-
ular time for filing briefs has elapsed, and be orally argued before
the court prior to the decision thereof.

ID.—OBJECT OF RULES OF COURT—EXPEDITION OF CAUSES—REQUEST FOR DELAY.
The rules of this court for the making up of the calendar, and the
filing of briefs, are designed to expedite and not to delay the de-
cision of causes, and have been framed with a view of giving all
parties ample opportunity to be heard before their causes are de-
cided against them; and where error is confessed, and it is legally
impossible that the defendant can have any other or greater relief
than the reversal of the order appealed from, a request that the
cause be put upon the calendar and argued prior to decision is
manifestly intended only for delay, and will not be granted.

ID.—HOMICIDE—SENTENCE OF DEATH—AFFIRMANCE OF JUDGMENT—FIXING OF
SUBSEQUENT DATE FOR EXECUTION—CONTINUANCE—ABSENCE OF COUNSEL.
When the sentence of death of a defendant convicted of murder
has failed of execution as the result of an appeal, and the judg-
ment of conviction has been affirmed upon appeal, the validity of
the judgment is past question in the superior court, and it is not
error to refuse a continuance of a hearing appointed for the fixing
of a subsequent date for the execution of the sentence, merely
because of the absence of a leading counsel in the cause, and it is
sufficient to prevent the granting of a continuance that the defend-
ant was represented by other competent counsel.

ID.—INQUIRY INTO FACTS—LEGAL REASONS AGAINST EXECUTION—EXISTENCE
AND EFFECT OF JUDGMENT—JUDICIAL NOTICE—CONSTRUCTION OF CODE.—
Section 1227 of the Penal Code, as amended in 1881, requiring the
court to inquire into the facts, upon a defendant being brought
before it, for the fixing of a date of execution of a sentence of
death which for any reason has not been executed, relates exclu-
sively to an inquiry into facts bearing upon the question whether
there are any legal reasons against the execution of the judgment,
such as a pardon or commutation of sentence, etc., and does not
necessitate an inquiry by testimony or other evidence as to the ex-
istence of the judgment and its legal effect, of which the court takes
judicial notice.

ID.—BURDEN UPON DEFENDANT.—The burden is upon the defendant to show, if
he can, that any legal cause exists against execution of the judgment

ID.—JUDGMENT ORDERING CONFINEMENT OF PRISONER IN STATE'S PRISON—RES
ADJUDICATA.—The legal effect of an explicit direction in the judgment
that the defendant should be kept in close confinement at San
Quentin by the warden of that prison from the time of his delivery
thereat until his execution, is a question involved upon an appeal
from the judgment, and, so far as the judgment is concerned, is
thereby concluded.

ID.—SUPERFLUOUS DIRECTION—DUTY OF WARDEN OF STATE'S PRISON.—It may
be true that a direction to keep the defendant in close confinement
has no proper place in the judgment, but, if so, it is superfluous
and harmless, it being, in the absence of such a direction, the duty
of the warden under the statute to keep the prisoner closely con-
fined in the designated prison.

ID.—IMPRISONMENT PART OF PUNISHMENT FOR MURDER—JUDGMENT NOT VOID.
Imprisonment in the penitentiary pending execution is part of the pun-
ishment for murder provided by law; and a judgment directing such
imprisonment is not void on the ground that it imposes a double pun-
ishment.

ID.—REFUSAL OF CERTIFICATE OF PROBABLE CAUSE—APPEAL—RENEWAL OF
APPLICATION.—The remedy for the refusal of a certificate of probable
cause for an appeal in a criminal case is not by appeal from the order
of refusal, but by renewing the application before a justice or
justices of this court.

ID.—ORDER FIXING DATE OF EXECUTION APPEALABLE—STAY OF EXECUTION—
CERTIFICATE OF PROBABLE CAUSE—TIME MUST BE ALLOWED FOR BILL OF
EXCEPTIONS.—An order fixing the date of execution of a sentence of
death, after the original time fixed by the sentence has elapsed, is
appealable as being an order made after final judgment affecting the
substantial rights of the defendant; but the execution of the sen-
tence will not be stayed unless there is a certificate of probable
cause, and in order to allow the justices of this court an oppor-
tunity properly to determine whether there is probable cause for the
appeal, the time fixed by the order must be sufficient to allow the
settlement of a bill of exceptions; and where such order fixes so
short a time as to deprive the defendant of any opportunity of get-
ting a bill of exceptions or any authenticated record before this
court, it is erroneous upon its face, and a certificate of probable
cause will be granted for an appeal therefrom, and it will be re-
versed upon such appeal.

APPEALS from orders of the Superior Court of the City and
County of San Francisco fixing the time for the execution of a
previous sentence of death. George H. Bahrs, Judge.

The facts are stated in the opinion of the court.

John H. Dickinson, Eugene N. Deuprey, and Louis P. Board-
man, for Appellant.

William F. Fitzgerald, Attorney General, and Charles H. Jackson, Deputy Attorney General, for Respondent.

BEATTY, C. J.—Two appeals entitled and numbered as above are pending in this court. Each is from an order of the superior court fixing a day for carrying into execution a sentence of death. The case is this: The defendant was convicted of murder in the first degree by a verdict involving the extreme penalty. He appealed from the judgment and from an order denying his motion for a new trial, but the judgment and that order were affirmed. (*People v. Durrant*, 116 Cal. 179.) Upon the going down of the *remittitur*, an order was made by the superior court requiring the sheriff of the county to produce the body of the defendant in that court on the tenth day of April, 1897. On that day, the defendant and his counsel being present in court, he was informed by the court of the previous proceedings in the cause, and asked to state any legal reasons he might have why the court should not make an order fixing a time for carrying into execution the judgment theretofore pronounced against him. His objections having been heard and overruled, an order was made directing his delivery within ten days to the warden of the state prison at San Quentin; that said warden keep him in close confinement in said prison until Friday, the eleventh day of June, on which day, between sunrise and noon, the warden was commanded to execute him by hanging. From this order the defendant immediately took the appeal first above entitled. The transcript of the record was filed in this court on May 8th, but that was too late to admit of a submission and decision of the cause under the rules of the court before the day appointed for the execution. Neither the people nor the defendant asked for an order to expedite the hearing, but the defendant applied to the justices for a certificate of probable cause for his appeal, which, if granted, would have had the effect of staying the execution. No justice of the court was, however, willing to certify that there was any probable cause for the appeal, and the execution would have taken place except for a *habeas corpus* proceeding instituted in the circuit court of the United States in behalf of the defendant. His petition for a writ of *habeas corpus* was denied by the circuit court, but his appeal to the supreme court

of the United States was allowed, the effect of which was to stay all proceedings under the judgment and order of the state court. Pending the proceedings in the federal courts, by consent of all parties the hearing of this appeal was continued from term to term until it was finally submitted at Sacramento in November. Matters being in this position, and the announcement having been made by telegraph that the supreme court of the United States had dismissed the defendant's appeal in the *habeas corpus* proceeding, the superior court, on the ninth day of November, made an order requiring the sheriff to produce the body of the defendant in court on the following day, to enable the court to inquire into the facts and to determine whether any legal reasons existed why the judgment of death should not be executed. In obedience to this order the defendant was brought into court on the tenth day of November, and in the presence of his counsel again informed of the previous proceedings in the cause, and required to state any legal reason he might have why a date should not be fixed for his execution.

In response to this demand the defendant offered in evidence certified copies of the proceedings in the circuit court upon his application for a writ of *habeas corpus*, from which it clearly appeared that his appeal to the supreme court had been regularly allowed and perfected, and that no *remittitur*, mandate, or order had been received from the supreme court showing any disposition of that appeal.

To this showing by the defendant no counter-showing whatever was made on the part of the people. The defendant, by his counsel, thereupon objected to any further action by the court for want of jurisdiction: 1. By reason of the pendency of the appeal in the *habeas corpus* proceeding in the supreme court of the United States; and 2. By reason of the appeal pending in this court from the order of April 10, 1897. The defendant also made other objections which need not be stated here. All these objections were overruled, and the court, on the tenth day of November, made an order directing the execution of the defendant on the 12th of November, between sunrise and noon.

From this order the defendant immediately appealed, but his bill of exceptions was not settled before the 18th, perhaps not before the 22d of November, *i. e.*, from six to ten days after the

time when the order commanded his execution. In the meantime, however, the supreme court being in session at Sacramento, counsel for defendant proceeded to that place, and on the afternoon of the eleventh day of November laid before the justices a copy of the order of November 10th, and of some of the proceedings in the superior court, certified by the county clerk, upon which he petitioned for a certificate of probable cause for his appeal, which was immediately granted by the concurrence of six out of the seven justices, and certified to the warden of San Quentin in time to prevent the execution. A transcript of the record on this appeal—which is the second above entitled—was filed in this court on December 2d.

On December 6th the attorney general, upon notice to counsel for defendant, moved to dismiss both appeals upon the ground that the days respectively fixed by the orders appealed from for carrying the sentence of death into execution having passed, the orders were no longer of any force and the questions involved were mere moot questions not calling for further consideration by the court.

But the court being of the opinion that the appeals ought not to be dismissed (*People v. McNulty*, 95 Cal. 594), and that there were some important points of practice involved which ought to be settled by a speedy decision, intimated that opinion from the bench, whereupon the attorney general offered to submit the second appeal (the first, as stated above, was submitted in November), upon a confession of error in the order appealed from, and asked an early decision in both cases.

Counsel for appellant, notwithstanding the confession of error which necessarily involved the granting of all the relief which they seek by their appeal, viz., the reversal of the order appealed from, objected to the submission of the second appeal, contending that under the rules of the court the case must go upon the calendar after the regular time for filing briefs, and be orally argued before the court prior to any decision.

This objection is without merit. The rules for making up the calendar and filing briefs are designed to expedite, not to delay, the decision of causes, and are framed with a view of giving all parties ample opportunity to be heard before their causes are decided against them. If there were any substantive right of ap-

pellant to be prejudiced by an immediate submission of his appeal his objection would not be unreasonable, but since the attorney general has confessed error and conceded that the order appealed from must be reversed, and since it is legally impossible that the appellant can ever have any other or greater relief than a reversal of the order, it is manifest that his objection is interposed only for the purpose of delay. We shall, therefore, consider and decide both appeals together.

It is not necessary to discuss the objections raised upon the first appeal at any length, but they will be briefly noticed.

1. From the beginning of the proceedings in the superior court the defendant had the assistance of two members of the bar as counsel—E. N. Deuprey and J. H. Dickinson. During a portion of the trial Mr. Deuprey was absent on account of sickness. On the tenth day of April, when the defendant was required to show cause why a day for his execution should not be fixed, Mr. Dickinson was absent, and Mr. Deuprey moved for a continuance upon that ground. It was shown that Mr. Dickinson had received due notice of the time and place fixed for the hearing of the motion of the people to fix the date of execution. His absence, under the circumstances, would not have made the granting of a continuance compulsory, even if his presence could have been of any advantage to the defendant. But it could not, for the defendant was represented by his other counsel, Mr. Deuprey, who was entirely competent, notwithstanding his absence during a portion of the trial, to represent the defendant on this motion. His plea for delay was based upon the suggestion that General Dickinson, from his greater familiarity with the proceedings, was better able than himself to present some matters connected with the trial and affecting the validity of the judgment. But since the judgment and order denying a new trial had just been affirmed in this court, and a rehearing denied, it is clear that the validity of the judgment was past question in the superior court. The court did not err in refusing a continuance.

2. It is next contended that the court "erred in refusing to inquire into the facts of the record, and in refusing to have proof made of the condition of the record, and the fact upon which the court might act in the premises, as provided by law."

I state this objection in the language of counsel. The point of

it, as I gather from the briefs, is that the court erred in not call-
ing the clerk of the court, and taking his testimony under oath
as to the existence and identity of the record of the judgment
in the case of *People v. Durrant*, then remaining in that court
and just before finally affirmed in this court.

It is contended that the failure to do this was a violation of
the provisions of section 1227 of the Penal Code as amended in
1891.  That section reads as follows: "If, for any reason, a judg-
ment of death has not been executed, and it remains in force,
the court in which the conviction is had, on the application of
the district attorney of the county in which the conviction is
had, must order the defendant to be brought before it, or, if he
is at large, a warrant for apprehension may be issued.  Upon the
defendant being brought before the court, it must inquire into
the facts, and, if no legal reasons exist against the execution of
the judgment, must make an order that the warden of the state
prison to whom the sheriff is directed to deliver the defendant
shall execute the judgment at a specified time.  The warden
must execute the judgment accordingly."

The facts which this section requires the court to inquire into
relate exclusively to the question whether there are any legal
reasons against the execution of the judgment, as, for instance,
a pardon or commutation of sentence by the executive.

Of the existence of the judgment and its legal effect the court
takes judicial notice.  The identity of the defendant with the
prisoner before the court might, under conceivable circumstances,
become a question of fact, but no such question arose in this
case, nor any other as to which the court was bound to take
testimony.  The judgment was within the judicial knowledge of
the court and the prisoner was before the court, and the burden
was on him to show, if he could, that any legal cause existed
against executing the judgment.  The court did not err in this
matter.

3. It is contended that not only the order of April 10, 1897,
but the original judgment also, are void, because each contained
an explicit direction that the defendant should be kept in close
confinement at San Quentin by the warden of that prison from
the time of his delivery thereat until his execution.  This was a
question involved in the original appeal, and so far as the judg-

ment is concerned was thereby concluded. However, if the objection possessed any merit it might be pressed—as it is—against the order of April 10th. But it has no merit. It may be true that a direction to keep the defendant in close confinement has no proper place in the judgment, but if so it is simply superfluous and harmless. In the absence of such a direction it would be the duty of the warden under the statute to keep the prisoner closely confined in the designated prison. (Pen. Code, secs. 1217-27.) Close confinement does not mean solitary confinement in the technical sense of that expression, but only secure confinement within the prison walls.

Nor is the order or judgment void because it imposes a double punishment. It is conceded that imprisonment in the penitentiary pending execution does add something to the punishment prescribed by the law of the state for the crime of murder prior to the amendments of 1891. It was so held in both of the opinions delivered by this court sitting in Bank in the McNulty case (*People v. McNulty*, 28 Pac. Rep. 816; 93 Cal. 427), which was decided upon the controlling authority of *Ex parte Medley*, 134 U. S. 160. And for this reason only it was held in the first decision—reported in 28 Pac. Rep. 816—that the law, being made applicable by its terms to homicides committed before as well as after its passage, was *ex post facto* and void. The second opinion —reported in 93 Cal. 427—retracted nothing that was decided on this point in the first, but the law was held constitutional because after the first decision a general saving clause in the Political Code was brought to our attention which confined its application to offenses committed subsequent to its passage, leaving prior offenses to be governed by the old law.

It is therefore a point settled, so far as the deliberate opinion of this court can settle it, that imprisonment in the penitentiary pending execution is a distinct part of the punishment for murder prescribed by our law. But the law has nevertheless been held valid as to all murders committed since its enactment. The only objection ever made to it heretofore was that it was *ex post facto*. Freed of that objection by the construction it received in the McNulty case, it has been hitherto supposed to be unobjectionable, and has been enforced in numerous instances. There is no restriction upon the power of the legislature to prescribe

double, treble, or any number of punishments for an offense, except that they must not be cruel and unusual, and must not be applied *ex post facto*. There is nothing cruel or unusual in close confinement in the penitentiary, and as to this case there is no pretense that the law is *ex post facto*.

4. The court did not err in refusing a certificate of probable cause, and, if it had done so, the remedy is not by appeal but by renewing the application before a justice or justices of this court, which was the course actually taken, with the result above stated.

This disposes of all the points involved in the first appeal, and shows that the certificate of probable cause was properly denied, and that the order should stand affirmed.

In the second appeal, the confession of error renders it unnecessary to discuss the points to be ruled in defendant's favor, and improper, perhaps, to discuss any which might have been ruled against him. Our reasons for reversing the order were, we thought, sufficiently stated in the opinion filed November 11, 1897, setting forth the grounds upon which we granted the certificate of probable cause. (*People v. Durrant, ante,* p. 54.) But it seems that upon one point we failed to make ourselves entirely clear. We said that an order fixing the date of defendant's execution within the time allowed him by statute to present his bill of exceptions was a violation of his rights and a gross abuse of discretion. We did not have time in making that order to elaborate the proposition stated, and, since the point of practice is important, we take the present occasion to make it plainer, if we can.

An order fixing the date of execution is "an order made after final judgment affecting the substantial rights of the defendant," and as such is appealable. (Pen. Code, sec. 1237, subd. 3; *People v. Sprague,* 54 Cal. 92; *People v. McNulty,* 95 Cal. 594.) But the appeal does not stay the execution without a certificate of probable cause (*People v. McNulty, supra*), and, therefore, the defendant may be executed pending his appeal if he fails to secure such certificate. This being so, it is of vital importance that the defendant should not be deprived of the means provided by the statute for obtaining a stay. Among those means is an application to the justices of the supreme court in case the certificate is refused by the judge of the superior court. (Pen. Code, sec.

1243; *Matter of Adams*, 81 Cal. 165.) In order to make the application to a justice of the supreme court, it is ordinarily essential that there should be a settled bill of exceptions, for by no other means can a judge who did not conduct the proceeding eventuating in the order appealed from know whether there are grounds for the appeal or not. The defendant then being by law entitled to his appeal, and entitled to a stay of proceedings pending his appeal, if any justice of the supreme court will grant him a certificate of probable cause, and a settled bill of exceptions being in most cases an essential prerequisite to his application to the justices of the supreme court, to deprive him of any opportunity of getting a bill of exceptions before the justices of the supreme court is to deprive him of his plain legal right in a matter of the highest moment, and if that is not error it would be difficult to say what error consists in.

In this case, the defendant was not only deprived of the ten days' time which the statute gives him to present his bill of exceptions, and of the further reasonable time necessary for its settlement and presentation to the justices of the supreme court, but he was deprived absolutely of any opportunity to go before that court with any properly authenticated record of the proceedings. The justices of the supreme court being at Sacramento, if but a single day had been taken to settle the bill of exceptions and furnish a certified copy, it would have been impossible to have presented the record to the justices, obtained the order and made regular service on the warden before the hour of execution had passed. This made the order erroneous upon its face without the aid of a bill of exceptions, and justified the issuance of the certificate of probable cause, regardless of the other point discussed in our opinion which was not and could not be brought regularly before us.

It has been suggested that the action of some of the justices in refusing the petition of Ebanks for a certificate of probable cause was inconsistent with these views. It is true that Ebanks was ordered to be executed in eight days from the date of the order, which was therefore erroneous, but a bill of exceptions was promptly presented and settled and certified by the judge of the superior court on the day following the order, so that when the petition for a certificate of probable cause was presented it

was supported by a duly authenticated copy of the record which showed that the defendant had been deprived of no legal right except the full time allowed by the statute for presenting his bill of exceptions, and that error he had cured by his own act. There was therefore no prejudice in the error and no ground for a reversal.

The motions to dismiss are denied. The order in case No. 308 is affirmed; the order in case No. 358 is reversed, and the cause remanded to the superior court, with directions to proceed according to law. It is further ordered that the *remittiturs* issue forthwith.

Henshaw, J., Temple, J., McFarland, J., and Harrison, J., concurred.

GAROUTTE, J.—The attorney general having confessed error in the second appeal, and there being no merit whatever in the first appeal, I concur in the judgment that the first order appealed from be affirmed, and that the second order appealed from be reversed.

### DISSENTING OPINION ON MOTION TO DISMISS APPEAL.

GAROUTTE, J.—There are two appeals pending before this court from orders made by the trial judge fixing the day for the execution of Theodore Durrant. The particular day fixed for the execution in each order has long since gone by. The attorney general now moves this court to dismiss those appeals upon the ground that the orders from which they were taken have ceased to have any force and effect whatever; that the questions raised thereby are no longer living questions; and that any decision rendered upon them could not possibly affect the rights of the defendant. In other words, it is insisted that by the mere lapse of time the appeals present nothing but moot questions. This position of the attorney general is eminently sound, and the appeals should be dismissed. The decision of them upon the merits could do neither the defendant nor the people any possible good; and under such circumstances our time should be devoted to matters more substantial and material. In *People v. McNulty*, 95 Cal. 594, the court refused to dismiss an appeal from an order similar to those here involved; but there the day fixed for the

execution had not expired when the motion was made. Hence that case has no bearing here. Some question is made by appellant upon these appeals to the effect that the orders were erroneous because they provided for close confinement of the defendant by the warden until the day of execution. But this contention has no force now, for the reason that such period of close confinement ceased when the day of execution passed by. So that portion of these orders is doing the defendant no injury, even conceding it erroneous. He has served his full time of close confinement under these orders, rightfully or wrongfully, and a decision of these appeals would in no way affect the matter. The case stands exactly as though a party should serve a sentence of one hundred days in jail, and thereafter appeal from the judgment of conviction. The court would refuse to hear such an appeal upon the ground that there was no live material issue before it.

The foregoing principles of law are fully supported by numerous decisions of this court, and I rest the matter with a single citation. In *Foster v. Smith*, 115 Cal. 611, the syllabus correctly declares the principle of the decision as follows: "Where a temporary injunction was granted to restrain a stockholder from voting at an election of the directors of a corporation, . . . . and such injunction was dissolved prior to the election, an appeal taken from the order dissolving the injunction after the election had been held raises only an abstract question and will be dismissed." In the body of the opinion it is said: "It thus appears that the parties to the litigation have no rights which can be affected by a reversal of the order, and that the correctness of the order has become merely an abstract question." And again: "If the order should be reversed, the superior court would have no function to perform in consequence of such reversal." Upon sound reason, the same principle necessarily applies to this case.

I see no material and substantial purpose to be subserved by a dismissal of these appeals. As the case now stands there is no legal reason to my knowledge why the trial court should not take steps to enforce its judgment. Yet such relief is asked by the attorney general, and there is no possible objection to granting it.

I dissent from the order refusing to dismiss the appeals.