[Crim. No. 2836. In Bank.—December 15, 1925.]

## In the Matter of the Application of JOSEPH H. WATTS for a Writ of Habeas Corpus.

[1] CRIMINAL LAW — DEATH SENTENCE — CONFINEMENT IN STATE PRISON—SECTION 1217, PENAL CODE.—The requirement of section 1217 of the Penal Code that a defendant upon whom sentence of death has been imposed shall be confined in the state prison pending the execution thereof, is a part of the punishment for the crime and is in addition to the punishment therefor which was provided prior to 1891.

[2] ID.—DEATH PENALTY—EFFECT OF APPEAL—AMENDMENT OF 1874 TO SECTION 1243, PENAL CODE.—By the amendment of 1874 to section 1243 of the Penal Code, whereby it was provided that an appeal from a judgment of conviction stays the execution of the judgment in all capital cases, the legislature intended that the taking of an appeal should automatically stay the execution of the death penalty alone.

[3] ID.—PLACE OF CONFINEMENT—EFFECT OF APPEAL—CERTIFICATE OF PROBABLE CAUSE.—That portion of a death sentence which requires the detention of the defendant in a state prison pending the infliction of the death penalty is not stayed by the mere taking of an appeal from the judgment of conviction; but upon such an appeal a certificate of probable cause may be issued by the judge of the trial court or a justice of the supreme court, the effect of which is to stay the execution of so much of the judgment as requires the imprisonment of the defendant in a state prison pending the hearing and determination of his appeal.

[4] ID.—CERTIFICATE OF PROBABLE CAUSE—DISCRETION.—The granting or denial of a certificate of probable cause is a matter within the sound discretion of the judge or justice to whom application therefor is made.

(1) 16 C. J., p. 1379, n. 74 New.   (2) 17 C. J., p. 107, n. 43, p. 109 n. 66.   (3) 17 C. J., p. 109, n. 66.

PROCEEDING on Habeas Corpus to secure release of person sentenced to suffer death penalty from custody of warden of state prison and to be returned to custody of sheriff. Writ granted.

1. See 8 Cal. Jur. 484, 650.
2. See 8 Cal. Jur. 548.

The facts are stated in the opinion of the court.

Fred A. Wilson for Petitioner.

U. S. Webb, Attorney-General, and Wm. F. Cleary, Deputy Attorney-General, for Respondent.

MYERS, C. J.—Watts was convicted in the superior court of San Bernardino County of murder in the first degree, without recommendation, and judgment was duly rendered imposing the death penalty. He gave oral notice of appeal in open court at the time of the rendition of judgment and thereafter filed his written notice of appeal therefrom. A warrant of execution was duly signed, attested, issued, and delivered to the sheriff in accordance with the provisions of Penal Code, section 1217, pursuant to which Watts was taken by the sheriff to San Quentin and there delivered to the custody of the warden of the state prison. Thereafter, upon application of the defendant, the trial judge issued a certificate of probable cause pursuant to the provisions of Penal Code, section 1243, and the same was thereupon duly served upon the sheriff of San Bernardino County and also upon the warden of the state prison of San Quentin, coupled with a demand that the defendant be redelivered to the sheriff of San Bernardino County and returned to the county jail of that county, to be there kept pending the hearing and determination of his appeal. These demands being refused, application was made to this court for a writ of *habeas corpus* to compel the return of the defendant to the custody of the sheriff of San Bernardino County. At the conclusion of the hearing before this court upon the return to the writ, it was the opinion of the majority of the justices that the application should be granted and an order to this effect was thereupon made from the bench.

Section 1243 of the Penal Code provides as follows:

"An appeal to the supreme court from a judgment of conviction stays the execution of the judgment in all capital cases, and in all other cases, upon filing with the clerk of the court in which the conviction was had, a certificate of the judge of such court, or of a justice of the supreme court,

that, in his opinion, there is probable cause for the appeal, but not otherwise."

Section 1244 of the Penal Code provides:

"If the certificate provided for in the preceding section is filed, the sheriff must, if the defendant be in his custody, upon being served with a copy thereof, keep the defendant in his custody without executing the judgment, and detain him to abide the judgment on appeal."

Section 1245 of the Penal Code provides:

"If before the granting of the certificate, the execution of the judgment has commenced, the further execution thereof is suspended, and upon service of a copy of such certificate the defendant must be restored, by the officer in whose custody he is, to his original custody."

[1] The requirement of Penal Code, section 1217, that a defendant upon whom sentence of death has been imposed shall be confined in a state prison pending the execution thereof is a part of the punishment for the crime and is in addition to the punishment therefor which was provided prior to 1891 (*Ex parte Medley,* 134 U. S. 160 [33 L. Ed. 835, 10 Sup. Ct. Rep. 384, see, also, Rose's U. S. Notes]; *People* v. *McNulty,* 3 Cal. Unrep. 441 [28 Pac. 816]; Id., 93 Cal. 427 [26 Pac. 597, 27 Pac. 61]; *People* v. *Durrant,* 119 Cal. 201, 208 [51 Pac. 185]). [2] We are of the opinion, however, that by the amendment of 1874 to the Penal Code, section 1243, whereby it was provided that an appeal from a judgment of conviction stays the execution of the judgment in all capital cases, the legislature intended that the taking of an appeal should automatically stay the execution of the death penalty alone. (*Ex parte Fredericks,* 104 Cal. 400 [38 Pac. 51].) Obviously, the execution of the defendant pending his appeal would render the appeal utterly valueless, and the legislature intended that such a result should not be dependent upon the hazard of granting or failing to grant a certificate of probable cause. [3] This consideration, however, presents no reason why the taking of an appeal from the judgment of conviction should automatically stay the execution of that portion of the death warrant which requires the detention of the defendant in a state prison pending the infliction of the death penalty. We are of the opinion that this portion of the punishment is comprised within the phrase "in all other cases," and

is not stayed, therefore, except upon the issuance of a certificate of probable cause. This view is suggested by what was said in *Ex parte Fredericks, supra,* wherein this court said: "Even if this imprisonment is to be regarded as a part of the penalty it stands upon the same grounds as other judgments of imprisonment. It is not stayed without a certificate of probable cause for the appeal, . . . " That a certificate of probable cause may issue in a capital case is the implication which arises out of what was said or done by this court, or by the justices thereof, in the following cases: *People* v. *McNulty,* 95 Cal. 594, 597 [30 Pac. 963]; *Ex parte Fredericks, supra; People* v. *Durrant,* 119 Cal. 54 [51 Pac. 1070]; *People* v. *Ebanks* (not reported, but referred to in *People* v. *Durrant,* 119 Cal. 210 [51 Pac. 185]); *People* v. *Sliscovitch* (an order of this court made October 6, 1923, not reported); *People* v. *Arnold and Sayer* (an order of this court made March 12, 1925, not reported). The only suggestion to the contrary to be found in our reports, so far as we are advised, is in the opinion of Chief Justice Beatty in *People* v. *Ross,* 135 Cal. 59 [67 Pac. 13]. That is not an opinion of the court and has never been expressly approved or disapproved by the court. The principal ground upon which the Chief Justice based his conclusion in that case has since been eliminated by the 1905 amendment to section 1227 of the Penal Code, taking away the right to appeal from an order fixing the time for the execution of the death penalty.

Our conclusion is that upon an appeal from a judgment imposing the death penalty a certificate of probable cause may be issued by the judge of the trial court or a justice of this court, the effect of which is to stay the execution of so much of the judgment as requires the imprisonment of the defendant in a state prison pending the hearing and determination of his appeal. [4] The granting or denial of such certificate is a matter within the sound discretion of the judge or justice to whom application therefor is made.

Waste, J., Lennon, J., Richards, J., and Shenk, J., concurred.

LAWLOR, J., Dissenting.—I dissent.

The precise question presented by this proceeding is whether the custody of a defendant in a capital case pending

appeal is with the sheriff of the jurisdiction or the warden of the state prison.

Three propositions appear clear: first, that the subject matter is exclusively within the control of the legislature; second, that the legislative policy contemplates that the custody shall be with the warden pending appeal; and, third, that not a single reasoned case can be said to be opposed to the legislative rule.

1. It will not be questioned that the entire subject involved by this proceeding is within the competence of the legislature.

2. Section 1243 of the Penal Code deals exclusively with stays of execution of the *judgment of conviction in all cases* appealed from the superior court and divides them into two classes: (a) capital cases and (b) all other cases.

It will be noted that under section 1243 the appeal from the *judgment ipso facto* stays the execution in capital cases, but that "in all other cases" a certificate of probable cause is requisite and is the exclusive mode of staying the execution of the judgment.

The practice in capital cases is to serve on the warden a certified copy of the notice of appeal, whether the appeal is from the judgment or an appealable order entered after final judgment. (See, for instance, *Ex parte Fredericks*, 104 Cal. 400 [38 Pac. 51].)

The conclusion follows that under the statute law a certificate of probable cause has no application to a capital case and that the appeal, of itself, by the terms of section 1243, stays the execution.

Prior to the amendment of section 1217 in 1891 (Stats. 1891, p. 272), the execution of the judgment in capital cases was carried out by the sheriff in the county jail where the prisoner was at all times confined following conviction and pending the execution, and therefore the question here presented could not, prior to said amendment, arise during the pendency of an appeal from the judgment. By the terms of said amendment all executions were required to take place in the penitentiary, the amendatory language of section 1217 reading in part, "and must direct the sheriff to deliver the defendant within ten days from the time of judgment, to the warden . . . for execution. . . . " A similar requirement is made a part of the proceedings under section 1227

where the execution has not taken place on the day fixed by the warrant of execution or any subsequent order. Hence there are two provisions (sections 1217 and 1227) expressing the legislative policy that the custody of a capital prisoner shall be in the warden pending appeal from the judgment or pending execution of the judgment, after it has become final, upon an order fixing the final day for carrying it into effect.

In view of the plain terms of sections 1217 and 1227 it is proper to hold that if the legislature had contemplated any departure from the prescribed statutory policy thus declared it would have expressly so provided. From the foregoing I conclude that by sections 1217 and 1227 the legislature intended that from the time of the delivery of the prisoner to the warden and until his execution he must be in the custody of the warden except when his presence is required in judicial proceedings. Section 1217 provides that the prisoner and the warrant for the execution of the judgment of death shall be delivered to the warden at the same time, thus enabling the executing officer to be prepared to carry the judgment into effect at the time fixed in the warrant. The stay of the execution beyond the time specified in the warrant, the judgment remaining in force, brings into operation the provisions of section 1227 requiring the trial court to enter an order fixing another day upon which the judgment shall be executed and providing that "a certified copy of such order . . . be transmitted . . . *to the warden . . . having the custody* of the defendant." Here, again, the warden having the prisoner in his custody is prepared to execute the judgment on the day fixed in such order without any further authority or direction. It is, therefore, plainly the legislative purpose that the defendant shall, from the time of delivery to the warden with the warrant and until the execution of the judgment, be in the custody of the executing officer, so that whether the execution be carried into effect on the day indicated in the warrant or in a subsequent order the prisoner is required to be always available to the executing officer. This conclusion finds support in the italicized language of the above-quoted expression.

3. It may be confidently affirmed under this head that no opinion has declared that the *custody* of a capital prisoner

pending execution is not with the warden of the penitentiary.

In *People* v. *McNulty,* 95 Cal. 594 [30 Pac. 963], the judgment of conviction had become final on appeal. The defendant thereafter took an appeal from the order fixing the final day of execution within the meaning of section 1227 and subdivision 3 of section 1237. After quoting section 1243, the court said: "It is clear from the reading of this section that it is only the appeal from the judgment of conviction . . . that stays the execution *proprio vigore.* In case of any other appeal, such, for instance, as this appeal from an order after judgment, the mere appeal has no effect in staying the execution, unless the judge of the superior court or a justice of this court should grant a certificate of probable cause for the appeal." That case did not involve the question of the proper custody of the condemned pending appeal and what was said touching the necessity of a certificate of probable cause was stated only in response to the argument of the attorney-general that if the appeal from such order operated in one case to stay the execution, it would have the same effect on successive appeals, and therefore the judgment of conviction would never be executed.

*Ex parte Fredericks,* 104 Cal. 400 [38 Pac. 51], involved an appeal by the defendant from the judgment of death. Before taking the appeal his custody had been transferred by the sheriff to the warden of the penitentiary. A certified copy of the notice of appeal was served upon the warden coupled with a demand for the return of the defendant to the custody of the sheriff, which demand was refused. In the proceeding a writ of *habeas corpus* was sought to effect a transfer of his custody to the sheriff. The court in denying the issuance of the writ declared: "The imprisonment of the petitioner is not unlawful. It is true that, by section 1243 of the Penal Code, it is provided that an appeal to the supreme court from a judgment of conviction stays the execution of the judgment in all capital cases. But the intention of the legislature in adopting this provision was merely to prevent the infliction of the death penalty pending the appeal, and it has not acquired any different meaning or effect since, or by reason of the change of the law by which in capital cases the prisoner is confined in the state prison pending the execution of the sentence of death."

The only question concerned in that proceeding was whether or not the appeal from the judgment of conviction operated, of itself, to stay the custody of the defendant in the warden. After answering the question in the negative, the opinion concluded with this *suggestion:* "Even if this imprisonment is to be regarded as a part of the penalty it stands upon the same grounds as other judgments of imprisonment. It is not stayed without a certificate of probable cause for the appeal, and no such certificate has been granted in this case."

*People* v. *Durrant,* 119 Cal. 54, 201 [50 Pac. 1070, 51 Pac. 185], embraced two appeals from two orders of the superior court fixing a day for the execution of the judgment of death after it became final on appeal. Following the making of the first order the sheriff, in conformity with section 1227 of the Penal Code, was ordered to deliver the defendant to the warden at San Quentin within ten days. The transcript of the record which was to be considered on the first appeal was filed too late to admit of a submission and decision under the rules of the court before the day appointed for the execution. Neither of the parties asked for an order to expedite the hearing, but the defendant applied to the *justices* for a certificate of probable cause for his appeal, which, it was stated in the opinion, would have the effect of staying the *execution.* It· appears that no justice of the court was willing to certify there was any probable cause for the appeal and the execution would have taken place except for a *habeas corpus* proceeding instituted in the circuit court of the United States in behalf of the defendant. His petition for the writ of *habeas corpus* was denied by the United States circuit court, but his appeal to the supreme court of the United States was allowed, the effect of which was to stay all proceedings under the judgment and order of the state court. Pending the proceedings in the federal courts the hearing of the appeal in this court from the order fixing the final day of execution was continued from time to time until word was received by telegraph that the supreme court of the United States had dismissed the appeal in the *habeas corpus* proceeding when an order was made in the superior court requiring the sheriff to produce the body of the defendant in open court on the following day to enable said superior court to determine whether any legal reasons existed why the judgment of death should not be executed.

In response to said demand upon the sheriff the defendant made showing that no *remittitur*, mandate, or order had been received from the supreme court of the United States showing any disposition of the appeal in the *habeas corpus* proceeding. To this showing by the defendant no counter-showing whatever was made on the part of the people. The superior court overruled these and other objections and made an order directing the execution of the judgment of death two days later.

From this, the second order fixing the final day of execution, the defendant immediately appealed, but his bill of exceptions was not settled and allowed until either six or ten days after the order commanded the execution of the judgment of death. Upon a petition for a certificate of probable cause addressed to the supreme court, supported by a showing of some of the proceedings in the superior court, certified by the county clerk, such certificate was immediately granted by the concurrence of six of the seven justices and certified to the warden at San Quentin in time to stay the execution. A transcript of the record on this appeal was duly filed in the supreme court, upon which a certificate of probable cause was issued.

The court stated that in a capital case an appeal from an order after final judgment does not operate, of itself, to stay the execution, but that a certificate of probable cause is necessary. It was also stated "that imprisonment in the penitentiary pending execution does add something to the punishment prescribed . . . for the crime of murder prior to the amendments of 1891," citing *People* v. *McNulty*, 93 Cal. 427 [26 Pac. 597, 29 Pac. 61], and *Ex parte Medley*, 134 U. S. 160 [33 L. Ed. 835, 10 Sup. Ct. Rep. 384, see, also, Rose's U S. Notes]. The court then concluded: "It is therefore a point settled, so far as the deliberate opinion of this court can settle it, that imprisonment in the penitentiary pending execution is a distinct part of the punishment for murder prescribed by our law." However, it was conceded by the court that "There is no restriction upon the power of the legislature to prescribe double, treble, or any number of punishments for an offense, except that they must not be cruel and unusual and must not be applied *ex post facto*." All the defendant sought in the Durrant cases, and necessarily all that was granted, was a stay of the *execution*.

The question was not presented, nor did the court decide, whether or not the custody of the defendant in the warden would be stayed, as well as the execution, in the event a certificate of probable cause should issue.

I may pause here to point out that the decision in *Ex parte Medley, supra,* by a divided court, held that the Colorado statute there in question violated the federal guarantee against the enactment of *ex post facto* laws. The statute of Colorado, differing from the California law, required, among other things, that the condemned should be kept in *solitary* confinement, and the court held that this was punishment additional to that provided at the time the crime was committed. It is open to question whether *Ex parte Medley, supra,* is authority in a case not involving solitary confinement pending execution. I am of the opinion that confinement in the state prison is not a part of the judgment any more than is the issuance and the delivery to the warden of the warrant; each being merely an incident to the carrying of the judgment into effect. Logically, if confinement in the state prison constitutes additional punishment, then detention in the county jail would also have that quality.

In *People* v. *Ross,* 135 Cal. 59 [67 Pac. 13], the defendant applied to the Chief Justice for a certificate of probable cause staying his execution after the judgment had become final and pending an appeal from an order fixing another day for carrying the judgment into effect, the judge of the superior court having declined to grant the stay. While this was not a decision by the court I deem it worth while to quote the following from the opinion of the Chief Justice as bearing on the proper interpretation of section 1243 and the general subject of a stay of proceedings in a capital case: "The statutory provision relating to certificates of probable cause is found in section 1243 of the Penal Code, which in terms embraces only appeals from judgments, and does not embrace appeals from orders after judgment. It has sometimes been assumed in the discussion of other matters that the provision would be construed as applying to appeals such as the present (*People* v. *McNulty,* 95 Cal. 594 [30 Pac. 963]); *but the proper construction of the law has never been settled by a decision of the court,* and, of course, cannot be settled by any decision or order that I might make without the concurrence of my associates. In *People* v. *Mc-*

*Nulty,* 95 Cal. 594 [30 Pac. 963], all that was decided was that an appeal from an order fixing the date for executing a capital sentence, does not, *proprio vigore,* stay the execution. In making this decision, it was said, *arguendo,* that a certificate of probable cause from the trial judge, or from a justice of this court, would be necessary, but the case did not call for a decision that such a certificate would be sufficient to operate a stay, and *the question was therefore not decided.* In *People* v. *Durrant,* 119 Cal. 54, 203 [50 Pac. 1070. 51 Pac. 185], the application was made to and acted upon by all the justices. It was in fact an application to the court for a *supersedeas* in aid of its appellate jurisdiction, and was dealt with as such. I think the proceeding in that case indicates the opinion of the court as to the proper practice in all similar cases, and I shall conform to it, not only because it is a proper and commendable practice, but more especially because, while my power in the premises is doubtful, that of the court is beyond question.

"I may add that, in my opinion, there are substantial grounds upon which the legislature may be supposed to have intended to make a different rule as to the stay of proceedings upon an appeal of this character and an appeal from a final judgment. On appeals from the judgment a stay of proceedings may be safely and properly granted by the trial judge or by a single justice of the supreme court, because no serious inconvenience can result from his mistake, if it turns out that in the opinion of the court the judgment is free from error. But on appeals from orders such as that in question here, where the effect of a stay would generally be to make another order of the same kind necessary, from which a new appeal could be taken, the mere doubts of á single judge, if he could act alone, might result in the indefinite postponement, or even the ultimate prevention, of the execution of a capital sentence in a case where the court on the hearing would find no ground for questioning the propriety of the order or orders appealed from. In such a case the granting of the stay must depend upon some apparent merit in the appeal, and that is a matter which the court alone is competent to decide. The decision should be made by the tribunal upon which the responsibility rests.

"For these reasons I shall decline to act upon the petition, leaving the appellant at liberty to apply to the court for a *supersedeas*, according to the practice in *People* v. *Durrant*, 119 Cal. 54 [50 Pac. 1070]." (Italics added.)

The McNulty case, the Fredericks case, the two Durrant cases, and the Ross case are the only ones since the amendment of 1891 I have found that have discussed the question of a stay in capital cases, and, with the exception of the Fredericks case, none of these has dealt with the question of *custody* pending appeal, but were concerned alone with a stay of execution. Furthermore, *Ex parte Fredericks, supra,* is the only one in which, as here, the appeal was from the judgment; the others involved appeals from orders made after final judgment.

If the statement of the late Chief Justice Beatty in the Ross case, who was also the author of the opinions in the McNulty case (95 Cal. 594 [30 Pac. 963]), the Fredericks case, *supra,* and the final opinion in the Durrant case (119 Cal. 201 [51 Pac. 185]), is to be accepted, and it was never questioned by the other justices, none of the above cases ever decided that a certificate of probable cause was necessary for *any* purpose in a capital case and any intimation to the contrary in the above McNulty case "was said *arguendo.*" It has been shown that the reference in *Ex parte Fredericks, supra,* to a certificate of probable cause to stay the custody was merely by suggestion, and that the only point decided was that under section 1243 the appeal from the judgment in a capital case stayed the execution alone. Whatever significance may attach to the circumstance that the two Durrant cases, in terms, characterized the relief granted as certificates of probable cause, there would seem to be warrant for the statement of Chief Justice Beatty in the Ross case that *supersedeas* and not certificates of probable cause was what was sought and granted, for in both cases the action was taken by the *court* as distinguished from an *individual justice*. It may be stated that section 1243 contains the only provision relating to a certificate of probable cause. That section provides that the application must be made to the *judge* of the superior court, who tried the case, or in the event he declines to grant the certificate of probable cause then to *a justice* of the supreme court. And while the relief under either mode would have the same legal effect (8 Cal.

Jur., p. 552, sec. 555), of course, an individual judge or justice could not grant *supersedeas*, nor a court a certificate of probable cause.

It is clear from what Chief Justice Beatty said in the Ross case that his mind was fixed on three propositions— and no statement to the contrary appears in any of our decisions since that time—first, that section 1243 deals alone with appeals from the judgment; second, in capital cases the appeal from the judgment, of itself, operates to stay the execution thereof, whereas "in all other cases" on appeal from the judgment a certificate of probable cause is necessary to stay its operation; and third, where, in *any* case, the appeal is from an order made after final judgment, section 1243 has no application, and in order to effect a stay of the judgment *supersedeas* alone, as an aid to the complete exercise of appellate jurisdiction (Const., art. VI, sec. 4), is the remedy.

I have pointed out that a certificate of probable cause is no part of the procedure prescribed by the first classification of appeals from the judgment—capital cases—in section 1243 and there is no other provision of law contemplating such a practice. Moreover, the statutory stay of the judgment in capital cases by virtue of the appeal therefrom renders unnecessary a certificate of probable cause in such cases. For the reasons already advanced the stay of the judgment in capital cases does not affect the custody of the defendant in the warden pending execution.

A certificate of probable cause is provided for in cases coming within the second classification of appeals from the judgment in section 1243 and in such case a record must be presented upon which the judge or justice, as the case may be, may determine whether there is probable cause for the appeal under the rule (*In re Adams*, 81 Cal. 163, 166 [22 Pac. 547]; *People* v. *Gallanar*, 144 Cal. 656 [79 Pac. 378]). In the event the certificate of probable cause is granted it operates to stay the execution of the judgment and the custody (secs. 1244 and 1245). The construction I have given to section 1243 would confine the two succeeding sections (1244 and 1245) exclusively to appeals other than in capital cases. On an appeal from an order after final judgment, in any case, a record is also applied and the same test will be applied in determining whether *supersedeas* shall be

granted. There is no provision of law for a certificate of probable cause to stay the operation of the judgment in this latter group of cases, and this no doubt prompted Chief Justice Beatty to declare in the Ross case that the proper remedy is *supersedeas*.

Where the appeal in a capital case is from an order after final judgment and *supersedeas* is granted the execution alone and not the custody, as on an appeal from the judgment of death, is stayed.

I find that since the Ross case only two applications have been made to this court to stay the custody of a capital prisoner pending the preparation of the record upon which application would subsequently be made for a certificate of probable cause to stay the custody in the warden pending appeal from the judgment. The first of these cases is *People* v. *Sliscovich,* Criminal No. 2613, and the second, *People* v. *Arnold and Sayer,* Criminal No. 2773. In the Sliscovich case, application was made by the defendant for a stay both of the execution and custody pending the preparation of the record on appeal upon which he intended to seek a certificate of probable cause to effect a transfer of his custody from the warden to the sheriff pending appeal. The attorney-general objected to granting the application, claiming that in capital cases the certificate of probable cause had no proper place and that the only stay involved in such cases was the stay of execution—the stay being effected merely by the taking of the appeal. The court made an order, without opinion, staying the execution and directing the transfer of the defendant from the penitentiary to the custody of the sheriff pending the hearing and determining of such application for a certificate of probable cause. The terms of the application indicate the defendant's appreciation of the rule that the appeal from the judgment alone stayed the execution itself.

In the Arnold and Sayer case the application is identical with that of the Sliscovich case but it was denied, without opinion, the order reading: "The within application for a stay of execution is denied." It seems to me that these rulings are inconsistent, for if it would be proper in the one case to stay the custody until an application for a certificate of probable cause to stay the custody pending the appeal

from the judgment of conviction had been presented and determined, it would be equally proper in the other.

Succinctly stated, the situation is this: It is the legislative policy that the condemned prisoner awaiting execution is to be kept in the custody of the warden (sections 1217 and 1227) ; the requirement is no more subject to judicial intervention than is the mode of punishment prescribed by the legislature. The safe custody of a person condemned to death is second only in importance to the execution itself. It is as necessary to the performance of the duty of the warden as is the warrant for the execution of the judgment. Once condemned every presumption and intendment is in favor of guilt. It is idle to hold that a different rule should not apply to prisoners condemned to death than to those awaiting imprisonment for less grave crimes. The desire to cling to life is an inherent quality in human nature. Hence, with death facing a condemned prisoner there would be every inducement to plot, to confederate with persons on the outside, to attempt to escape from a county jail lacking the safeguards of a penitentiary, or to accomplish self-destruction.

The question of custody being one of legislative control, and sections 1217 and 1227 prescribing that the warden shall have the custody of the condemned, in the absence of a plain provision that pending proceedings after judgment and before execution the custody must be transferred to the sheriff, there is no warrant for judicial intervention in this regard. Conceivably, the legislature could have provided for a stay of custody as it did for a stay of execution, but as it has not done so the requirement of sections 1217 and 1227 must be deemed mandatory pending execution.

While the only question presented for decision here is whether the custody of a condemned prisoner in the penitentiary may be stayed pending execution, it may be appropriate to briefly consider whether in the absence of a statutory provision there may be a stay of *execution* pending an appeal from an order *before* judgment denying a defendant's motion for a new trial. As already indicated, section 1243 would not authorize a stay other than by an appeal from a *judgment of conviction*. Ordinarily the appeal from the order denying a motion for a new trial and the appeal from the judgment are taken together and determined at the same

197 Cal.—40

time. But if, for any reason, the appeals were presented separately, possibly after the judgment had become final, and the appeal from the order could not be seasonably determined, the propriety of granting *supersedeas* would necessarily arise. There is no statutory provision for staying the execution pending an appeal from an order denying a motion for a new trial, and in such a situation the procedure, already described, would be similar to that applicable to appeals from orders *after* final judgment, and, as in the latter class of cases, should *supersedeas* be granted the writ would stay the execution alone.

The conclusion in the majority opinion rests primarily upon the assumption that the imprisonment in the penitentiary pending execution "is a part of the punishment for the crime and is in addition to the punishment therefor." Even if this be conceded, for present purposes, it will not be questioned that the legislature is competent to provide that a capital prisoner shall be confined in the penitentiary pending execution, and that the propriety of such a provision would be beyond judicial review. It was stated in the second Durrant case (119 Cal. 201, 208 [51 Pac. 185]) that the legislature might impose any number of punishments for a crime provided they were not cruel and unusual or applied *ex post facto*. Therefore, the determinative question here is not whether imprisonment in the penitentiary pending execution is additional punishment, but rather whether the legislature, acting within its powers, has provided that the custody of a capital prisoner shall be in the warden pending execution. I see no escape from the conclusion, already announced, that the legislature has so deliberately provided.

In my opinion the writ of *habeas corpus* should be discharged and petitioner remanded to the custody of the warden.