LYNES VS THE STATE OF ALABAMA.

*Of writs of error in criminal cases.*
*Of pleas in abatement for misnomer.*

1. The legislature having omitted to prescribe the regula-
   tions, by which the ordinary constitutional power of this
   Court, over subordinate jurisdictions, is to be exercised in
   criminal cases,—the Court in bringing such cases before
   it for revision must resort to such writs as are known to the
   law.
2. This Court recognizes the writ of error, as a common law
   writ.
3. This Court has the unquestionable right, in the exercise
   of its constitutional power, to bring before it criminal ca-
   ses, by ordering a writ of error.
4. A substantial misnomer of either the christian or sur-name,
   is good matter of plea in abatement.
5. Thus—It may be well plead in abatement to an indict-
   ment, charging one by the name of *George Lyons*, that de-
   fendant's true name is *George Lynes*.

   At the last term of this Court, it being suggested,
that in the record and proceedings, of the Circuit
Court of Madison, in a case wherein the said Lynes
was defendant to an indictment, and upon which
he was convicted,—great error existed—this Court
awarded a writ of error.

   The record returned in obedience to said man-
date, disclosed—that at the October term, eighteen
hundred and thirty-four, of the Circuit Court of
Madison, an indictment was found against *George*

*Lyons,* Solomon Smith, John Ogden and Hugh Clingham, for the offence of playing at cards.

The plaintiff in error being called to his trial on this indictment, plead the following plea, to wit—

"George Lynes, indicted by the name of George Lyons, in his own proper person, cometh into Court here, and having heard the said indictment read, saith, that his name is, and always hath been, from his nativity, George Lynes, and by that name hath always hitherto, been called or known, without this that he, the said George Lynes, now is, or at any time hitherto, hath been called or known by the name of Lyons, as by said indictment, is supposed: And this, he the said George Lynes, is ready to verify—Wherefore, he prays judgment of the said indictment, and that the same may be quashed, &c."

A demurrer was sustained by the Court to this plea, and upon *not guilty,* the defendant was convicted of the offence charged.

Argued here by *M' Clung* for the plaintiff in error, and by the *Attorney General,* contra.

COLLIER, J.—This Court at its last term, on the application of the plaintiff in error, awarded a *writ of error* to the Circuit Court of Madison, directing the clerk of that Court, to send up a full and complete transcript of the record of his indictment and conviction at the suit of the State, for playing "at a game of cards, in a public house, &c." which record is here regularly returned, with the writ of error.

As the present, is the first case of a criminal

prosecution, ever brought here by process, from this Court, it may not be out of place, briefly to state the reasons on which we place our right, to revise the judgments of the Circuit Court in such cases, by writs of error.

By the *first section* of the *fifth article* of the constitution of Alabama, it is declared that the judicial power of the State, shall be vested in one Supreme Court, Circuit Courts to be holden in each county in the State, and such inferior Courts of law and equity, not to consist of more than five members, as the General Assembly, may from time to time direct, ordain, and establish.

By the *second section* of the *same article*, the Supreme Court is vested with appellate jurisdiction only, co-extensive with the State, under such restrictions and regulations, as from time to time, may be prescribed by law: *Provided*, that it shall have power to issue writs of *injunction*, *mandamus*, *quo warranto Habeas Corpus*, and *such other* remedial writs as may be necessary to give it a general superintendance and control over inferior jurisdictions.

The constitution clearly invests this Court with the right of supervision, over the judgments of subordinate jurisdictions; but the legislature have omitted to prescribe the mode, by which judgments in criminal cases, shall be brought up for revision, leaving undefined the "restrictions and regulations," contemplated by the constitution in this particular.

The *Proviso* to the second section, gives the right to issue such remedial and original writs, as may

be necessary to give efficiency to the constitutional powers of this Court. We have no power to frame writs for this purpose, but must adopt such as are known to the law. Let us then enquire, whether the *writ of error* is of common law origin, and what is its office.

In *Coke* upon *Littleton*, (288 b.) and in *Bacon's Abridgement*, (2. vol. 187.) a writ of error is said to be an original writ, issuing out of the Court of Chancery, in the nature as well of a *certiorari* to remove a record from an inferior into a superior Court, as of a commission to the Judges of such superior Court, to examine the record, and to affirm or reverse it, according to law; and lies where a party is aggrieved by any error in the foundation, proceeding, judgment, or execution of a suit in a Court of record. This writ does not owe its origin to a statute. Its uses have been in some instances directed by the legislature, and as a remedial process, it has in some cases been extended. Its name indicates its true purpose. And in the case of *The Queen vs Paty*,* it was held to be grantable in all [*2 Salk. 504.] cases *ex debito justitiæ*, except in *treason and felony*. (See further to the same effect, a very elaborate note to *Saunders Reports*—2 vol. 100–n. 1.)

In treason and felony, it was necessary to obtain the King's consent, before the writ could issue.— *The People vs Yates*.† [†6 John. R, 337.]

In England, the King is esteemed as the fountain of justice, and the Supreme Magistrates of the Kingdom, entrusted with the whole executive power of the law. No Court whatsoever, within the Kingdom or its dependencies, can claim any jurisdic-

tion, unless it some way or other, derive it from the Crown.*   The Judges are his representatives, and derive their powers from him.

*2. Bac. Ab. 96.

Now in this country, the Chief Executive Magistrate of the State, possesses no judicial powers. Such as are compatible with our form of government, and which were exercised by the King in England,—by our constitution, have devolved upon the judiciary. The writ of error, being a common law writ, and necessary to the exercise of the constitutional powers of this Court, we consider our right to issue it unquestionable. How far the legislature may trammel this right by "*restrictions and regulations,*" is any inquiry which need not be made. It is enough for us, that these have not yet been enacted.

To examine the case as presented, the only error relied on, which we deem it necessary to consider, is that which brings to our view, the judgment of the Circuit Court, sustaining the demurrer for the defendant in error, to the plea in abatement of the plaintiff. This plea asserts that the plaintiffs, name is *George Lynes,* and not *George Lyons,* as he is charged in the indictment.

The demurrer admits the truth of the plea, and the only question to be determined, is whether the matter of it be fatal to the indictment.

*Hawkins*† lays it down, that a defendant cannot take advantage of a mistaken sur-name in the indictment, though he may of a mistaken christian name; though, the sur-name by which he is described, hath no affinity with his true one, and he was never known by it.

†2 P. C. 317.

Lord Chief Justice *Hale** states the law as *Haw-* kins· does, and refers to some very old authors, the correctness of which he questions, and remarks that it is always safest to allow· the plea of misnomer, both as to the sur-name and christian name. It is difficult to discover why the distinction between the one name and the other should ever have been introduced—it must have been upon some refinement of reasoning, which has become antiquated and obsolete.

Modern decisions make no distinction between a misnomer of the sur-name and christian name. In either case, if it be substantial, it is good cause for an abatement of the proceedings.

The usual criterion by which it is determined, whether there should be an issue to the jury upon the plea, is to inquire if the name disclosed in the plea, has the same sound with that set out in the indictment. If it has, the plea does not contain abateable matter. Let us try the plea by this test: *Lynes* is a name of but one syllable, while *Lyons* is a name of two, and conveys to the ear, sounds quite dissimilar. *M'Cann* for *M'Carn* was held to be a fatal variance in *Tannet's* case.† So *Shakespeare* for *Shakespeare*, in *Shakespear's*. case.‡ *Tarbart* for *Tabart*, was held bad in *Bingham vs Dickie*.§

The *Attorney General* has refered us to a note in *Roscoe's Criminal Evidence*, (page 80.) where it is stated that *Harris* was alleged in the indictment instead of *Harrison*, the true name, though he was sometimes called by the former. And the Supreme Court of Tennesse. in the case of the *State vs*

*2 P. C.
175-6.

†Russ. &
Ry. 351.
‡10 East.
83.
§5 Taunt.
14.

5 P. 31

*1 Over.
R. 434.

*France** held that there was no variance. We have not the report of that case before us, but if it were examined, we think it would be found to be a case of larceny, in which property charged to have been stolen, was alleged to be the property of *Harris*—that his true name was *Harrison*; though he was sometimes known by the former name—that there was no plea in abatement, and that the rule of *idem sonans*, had no influence upon the decision.

Our opinions are, that the demurrer to the plea, should have been overruled.

The judgment is therefore reversed.