[No. 10,905.  In Bank.—September 30, 1884.]

## THE PEOPLE, APPELLANT, *v.* GEORGE L. JORDAN, RESPONDENT.

CRIMINAL LAW—APPEAL FROM DECISION SUSTAINING DEMURRER.—The Penal Code makes no provision for an entry of judgment on demurrer other than the entry of an order upon the minutes. The entry of such an order in the minutes is a judgment, and where a demurrer to an indictment is sustained, an appeal from such decision is effectual, although the notice of appeal states that the appeal is taken from the "order" sustaining the demurrer.

ID.—JURISDICTION OF SUPREME COURT.—Where the Supreme Court has been given by the Constitution appellate jurisdiction in a particular class of cases, but the legislature has prescribed no means for taking an appeal, the appellate court has inherent power to establish any appropriate system of procedure, and for such purpose may adopt rules, issue writs of mandamus and *certiorari*, or frame and issue any suitable writ, or adopt any mode of procedure already prescribed for bringing a cause before it.

ID.—APPEAL IN CASES OF MISDEMEANOR PROSECUTED BY INDICTMENT OR INFORMATION.—The Supreme Court has appellate jurisdiction in cases of misdemeanor prosecuted by indictment or information, and the legislature having failed to provide a mode of procedure on such appeals, the practice pursued in the present appeal is adopted; and hereafter appeals in criminal actions prosecuted by indictment or information, amounting to misdemeanor only, will be entertained from the judgments and orders mentioned in chapter 1 of title 9 of part 2 of the Penal Code, when the appeal is taken in the manner therein prescribed.

MOTION to dismiss appeal. The facts are stated in the opinion of the court.

*John M. Lucas,* for the Motion.

*Attorney-General Marshall,* contra.

McKINSTRY, J. — Motion of respondent to dismiss appeal. This is an appeal by the people from a judgment for the defendant on a demurrer to the indictment. (Pen. Code, § 1238.) Respondent moved to dismiss the appeal on the grounds:—

1. That the notice of appeal is insufficient, ambiguous, and

unintelligible, in that it purports to have been taken from an order of *this* and not of the Superior Court, and in that it does not designate the order appealed from with sufficient certainty.

2. That the appeal is from an order sustaining a demurrer, and not from a judgment on demurrer.

3. That no appeal will lie, the offense charged, if any, being a misdemeanor.

1. The notice of appeal is entitled " in the Superior Court of the city and county of San Francisco, State of California," and the notice refers to the order of "said court [which last words are claimed by respondent to relate to *this* court, because they follow immediately after the statement that the appeal is taken to the Supreme Court] sustaining the demurrer to the indictment *in the above entitled* cause." The notice plainly indicates the purpose to appeal from a particularly described order of the Superior Court.

2. The Penal Code does not provide for any entry of judgment on demurrer other than the entry of the order upon the minutes. (§ 1007.) The order in the minutes is the judgment. Although it is always better to employ the language of the Code, a judgment that a demurrer be " sustained " is in effect a judgment that the demurrer be allowed. The language of the judgment appealed from is: " It is ordered, adjudged, and decreed that the defendant's demurrer be, and the same is sustained." This is in substantial compliance with section 1007 of the Penal Code. The mere fact that in the notice of appeal the judgment specifically described is called an " order " does not render the notice ineffectual.

3. The legislature has prescribed no procedure for an appeal to this court in criminal actions, except "in criminal actions amounting to felonies." (Pen. Code, § 1235.) But the Supreme Court has appellate jurisdiction " in all criminal cases prosecuted by indictment or information," etc. (Const. art. vi. § 4.) The same section of the Constitution provides: " The court shall also have power to issue writs of mandamus, *certiorari*, prohibition, and habeas corpus, and all other writs necessary or proper to the complete exercise of its appellate jurisdiction." The power to issue the writs specified, or any other writ, in a case where it may be necessary or proper to resort to it to secure the

complete exercise of the appellate jurisdiction of the court, would exist had the Constitution been silent on the subject. It may be conceded for our present purposes that where machinery has been supplied for the employment of its jurisdiction by legislative enactment, such machinery must be adopted or accepted by the court. But when a certain jurisdiction has been conferred on this or any court, it is the duty of the court to exercise it; a duty of which it is not relieved by the failure of the legislature to provide a mode for its exercise. In the absence of any rules of practice enacted by the legislative authority, it is competent for the courts of this State to establish an entire Code of procedure in civil cases, and an entire system of procedure in criminal cases, except that criminal actions of a certain class must be prosecuted by indictment or information. (Const. art. i. § 8.)

While the English courts have recognized the power of Parliament to create a practice, or to amend an existing practice, the main body of the practice was established by rules, or was the outgrowth of customs recognized and sanctioned by the courts at Westminster. Before the 1 W. 4, c. 70, the course of proceedings in the Superior Courts of law, as well respecting practice as pleading, was regulated by one of four authorities, viz.: First, by general statutes ; secondly, by express written rules ; thirdly, by *prior decisions ;* and fourthly, by *usage.* The statutes in general equally applied to all those courts, but the express rules were made by the judges of each court from time to time, and only applied to the proceedings of that particular court; and the decisions and usages were principally confined to a particular court. Such usages constituted what might be termed the *common law* of the court as distinguished from the statutes and written particular rules. (3 Chitty Gen. Pr. 50.) Long usage in the practice of the courts, or of a particular court, may be considered the common law of the court; for the acquiescence in constant proceedings, as well by the judges as its experienced officers, denotes that it is reasonable, and has not been found objectionable, because if it had it would soon have produced an immediate change; the judges of each court have *implied power* to alter any inconvenient practice when they think fit. (3 Chitty Gen. Pr. 56.) In a conservative spirit Mr. Chitty adds : " It

is important that such usage should be adhered to until expressly altered by statute or rule, because otherwise practitioners relying on the known practice would be misled if there were any sudden unpromulgated changes; and the same principle, indeed, weighs against any change, unless imperatively called for by strong necessity," etc.

Doubtless when a practice with respect to any procedure as to which the statutes are silent has been once adopted by this court, the protection of practitioners would demand that no change should be made, except by rule, duly published. But the authority of any usage is derived from its recognition and sanction by the court, and we cannot decline to take cognizance of a matter clearly within our jurisdiction because the mode of procedure applicable to it has not been regulated by statute, written rule, or precedent. In such case it is our duty to create a precedent.

When this is done we do not recognize an existing *usage*. But as the usages of the English courts, of however long standing, had no innate force as rules or laws, but derived their sanction solely from the court which permitted them to be followed, and which had power to alter them at any time, so this court (the statutes being silent) may adopt or ratify the practice resorted to on the first occasion, when the exigencies of a cause require a reasonable and unprecedented practice to be resorted to.

If *casus omissus* in the procedure established by law and written rules is called to our attention in advance, we may by rule provide for it; if not, when the case is presented we must adopt for it an appropriate mode, in itself reasonable, which is to be followed in like cases until altered by statute or rule. The power of courts to establish a system of procedure by means of which parties may seek the exercise of their jurisdiction, at least when a system has not been established by legislative authority, is inherent. *A fortiori* must this be so in California, where the judicial is a separate department of the government under our written Constitution.

Applying these principles to the case in hand, the defendant here was prosecuted by indictment, and the legislature has failed to provide any machinery for taking an appeal from a judg-

ment for or against him. We are confronted by the duty, imposed by the Constitution, of reviewing the proceedings of the court below. We entertain no doubt that we have the power of declaring, and that it is our duty to declare, how this and like cases may be brought here for review. We may issue to the lower court a writ of mandamus or *certiorari*, or we may frame and issue any other appropriate writ. But our power is not limited in the exercise of our appellate jurisdiction to the employment of technical *writs*. We may by *rule* establish any appropriate practice for the bringing here a record or proceeding in the court below. Still further, we possess the power as necessarily incident to our jurisdiction, of recognizing as proper any mode of procedure already adopted for bringing a cause before us. In *Pieper* v. *Centinela Land Company*, 56 Cal. 173, this court held that where the statute prescribes no mode by which papers used on a hearing in the court below shall be authenticated, this court has power to prescribe by rule how such papers shall be brought before it on appeal, and also (in the absence of any rule), to ratify the mode adopted in the court below. If, in the absence of legislative regulation, it may thus ratify a portion, it may adopt the whole of the procedure by which a cause is brought here.

The cases cited by counsel for respondent from 3 Dall. 321, 409, and 3 Cranch, 159, are not in point. The Constitution of the United States provides that the appellate jurisdiction of the Supreme Court shall extend to enumerated cases, "with such exceptions, and under such regulations, as the Congress shall make."

In early cases in this State, the writ of *certiorari* was refused by this court where no appeal had been provided by statute. (*Warner* v. *Hall*, 1 Cal. 90; *White* v. *Lighthall*, 1 Cal. 347.) "But," as said by Mr. Hayne, "at that time the power of the court to frame process proper for the exercise of its jurisdiction, in cases where no process had been provided by the legislature, does not seem to have been understood." (New Trial and Appeal, § 181.) The same learned writer adds: "The cases may, however, be regarded as authority upon the proposition that the constitutional jurisdiction of the court cannot be exercised in the absence of process provided by some competent authority."

The three judges who concurred in the order dismissing the appeal, in *Houghton's Appeal*, 42 Cal. 58, held that the Constitution then in force did not give to the Supreme Court appellate jurisdiction in a statutory proceeding for *modifying grades*, etc.; also that such proceeding in the county court was a "special proceeding," and not a case at law "involving the validity of an assessment," within the meaning of the Constitution; further, that the judgment from which the appeal in form had been taken was made "final and conclusive," and unappealable by the express terms of the statute. In that case the statute prohibited an appeal and the Constitution gave none. It was, however, said, in an able concurring opinion by Chief Justice Wallace: "Independently of rules adopted by this court (and there are none), an appeal, as mere procedure, is defined by statute; it is essentially the creature of the statute, and may be accorded or withheld, restrained or wholly abrogated. It cannot be held to have any existence except as found in the expression of the legislative will. . . . While that instrument (the Constitution) has defined the cases to which the appellate jurisdiction of this court extends, it has not attempted to provide, in any wise, for the mere instrumentalities through which that jurisdiction is to be exercised. It has left that subject *wholly at large*, and to be provided for by the legislature through statutes enacted, or in default of them, by this court, through *rules adopted for that purpose.*" We agree in the main with the views so clearly expressed by the late chief justice, but do not assent to the conclusion that, in default of a statute, or of a rule formally adopted and promulgated, we should refuse to exercise a jurisdiction imposed upon this court by the Constitution. The power to establish rules providing an appropriate practice, where the legislature has not provided such, is not derived from the statute which purports to authorize this court to make rules, but exists inherently as an incident to the jurisdiction conferred, and it can hardly be doubted that, in the absence of statute, rules of practice with respect to matters as to which the Codes are silent may be adopted to go into force after such publication as this court may deem proper, or without any publication.

In *Middleton* v. *Gould*, 5 Cal. 190, it was said that as the law

stood, there was no statutory appeal from a judgment of a county court (on appeal from a Justice's Court), in an action of forcible entry and detainer. There is in the opinion *dictum* to the effect that the only remedy of the party aggrieved by such a judgment was to sue out a writ of error. But appellate jurisdiction in actions of forcible entry or detainer was not conferred in terms on the Supreme Court by the Constitution of 1849, and the case does not show that the matter in dispute exceeded two hundred dollars in value. Unless the matter in dispute did exceed two hundred dollars in value the Supreme Court, under the Constitution of 1849, had no jurisdiction to review the judgment through any instrumentality. Nor does it appear that any suggestion was made to the court with reference to its power to establish or adopt an appropriate procedure for the exercise of its jurisdiction.

This last remark applies equally to the case of *French* v. *People,* reported in the seventy-seventh volume of the Illinois Reports (p. 532).

In *Blum* v. *Brownstone,* 50 Cal. 293, it was decided that where the legislature had enumerated the orders of the Probate Court, from which an appeal might be taken, no *direct appeal* from any other probate order will be entertained, and in *Sacramento* v. *Harlan,* 24 Cal. 334, that a *writ of error* does not lie when an appeal has been given by statute. Neither of these cases conflicts with the view we have taken. In *Ex parte Thistleton,* 52 Cal. 220, the Supreme Court held that the omission of the legislature to provide the machinery for the taking of appeals from the city criminal court of San Francisco to the county court was not fatal to the act creating the former court, but that the appellate jurisdiction of the county court might be exercised by means of writ of error, or — under the statute authorizing it to issue all writs necessary to the exercise of its powers — by means of an appropriate writ framed for the purpose. The Supreme Court reserved the question whether the county court could, by rule or otherwise — in the absence of express authority from the legislature — establish a system for the taking of appeals, saying: "Whether in the absence of a statute purporting to grant the power, a court on which the Constitution has conferred certain jurisdiction would have the power by rule to establish the

machinery for bringing within its judicial cognizance the person of a party and an appropriate subject-matter, and of prosecuting a proper plaint to judgment, is a question which need not now be considered."

*Humiston* v. *Smith*, 21 Cal. 129, only decides that when the system provided by the Practice Act provides an adequate remedy, no other can be pursued. The legislature of *Alabama* having omitted to prescribe the regulations by which the ordinary constitutional power of the Supreme Court of that State, over subordinate jurisdiction, was to be exercised in criminal cases, the Supreme Court held that in bringing such cases before it for revision it might resort to such writs as were known to the common law. (*Lynes* v. *The State*, 5 Port. 236.)

We are fully satisfied that we are empowered to make applicable to misdemeanors, prosecuted by indictment or information, the provisions of the Penal Code with reference to appeals in criminal actions amounting to felonies. We adopt the practice pursued in taking the present appeal, and will hereafter entertain appeals in criminal actions prosecuted by indictment or information amounting to misdemeanors only, from the judgments and orders mentioned in chapter 1, of title 9, of part 2, of the Penal Code, when the appeal is taken in the manner therein prescribed.

Motion to dismiss appeal denied.

MORRISON, C. J., MYRICK, J., SHARPSTEIN, J., ROSS, J., and THORNTON, J., concurred.