[Crim. No. 1732. Second Appellate District, Division Two.—November 19, 1928.]

In the Matter of the Application of MARCO ALBORI for a Writ of Probable Cause.

[Crim. No. 1746. Second Appellate District, Division Two.—November 19, 1928.]

In the Matter of the Application of MARCO ALBORI for Admission to Bail Pending Decision on Petition for Certificate of Probable Cause and Pending Determination of Appeal.

Thos. P. White, Vincent C. Hickson and A. P. G. Steffes for Petitioner.

U. S. Webb, Attorney-General, John W. Maltman, Deputy Attorney-General, Asa Keyes, District Attorney, and Tracy Chatfield Becker, Deputy District Attorney, for Respondent.

WORKS, P. J.—Petitioner is a defendant in two actions which, until recently, have been pending in the superior court of Los Angeles County. In each action he was found guilty of the crime of assault with a deadly weapon and under each verdict he was sentenced to confinement in the penitentiary for the term prescribed by law. From the judgments against him and from orders denying his motions for new trials petitioner has perfected his appeals to this court. In due time he moved the superior court for a certificate of probable cause for his appeals and the motion was denied. Petitioner next, and in due time, moved the superior court for an order staying, pending his appeals, the execution of the judgments pronounced against him. This motion also was denied. Petitioner then instituted in this court the proceeding which is above designated by the number Crim. 1732, a proceeding for a stay of execution pending appeal, although differently entitled.

For many years prior to the session of the legislature held in 1927—indeed, ever since 1874—the language of section 1243 of the Penal Code stood as follows: "An appeal to the supreme court from a judgment of conviction stays the execution of the judgment in all capital cases, and in all other cases, upon filing with the clerk of the court in which the conviction was had, a certificate of the judge of such court, or of a justice of the supreme court, that, in his opinion, there is probable cause for the appeal, but not otherwise." The section had been held (*In re Mayen*, 49 Cal. App. 531 [193 Pac. 813]; *In re Murphy*, 185 Cal. 298 [97 Pac. 59]) to apply to appeals to the district courts of appeal as well as to appeals to the supreme court, and it had been determined in many cases (see *In re Adams*, 81 Cal. 163 [22 Pac. 547]; *People* v. *Gallanar*, 144 Cal. 656 [79 Pac. 378]) that an appealing defendant in a criminal case was

entitled to the certificate mentioned in the section as a matter of right if his appeal were not clearly frivolous. It was said in one of these cases that the phrase "probable cause for the appeal," as employed in the section, "means only that there is presented a case that is debatable; a case that is not clearly and palpably frivolous and vexatious; a case upon which there may be an honest difference of opinion" (*In re Adams, supra*). The law is also well settled, under the language of section 1243, as it stood before 1927, that "A certificate of probable cause, in all its effects, is, substantially, the equivalent of an order staying execution pending an appeal from a judgment of conviction—nothing more and nothing less. Its filing with the clerk, by whomsoever it may have been granted, operates as a *supersedeas*" (*In re Mayen, supra*).

The orders of the superior court, denying petitioner's application for a certificate of probable cause and his application for a stay of execution, were made under the provisions of section 1243 as recast by the legislature in 1927. As enacted at that time the section reads: "An appeal to the supreme court or to a district court of appeal from a judgment of conviction stays the execution of the judgment in all cases where sentence of death has been imposed, but does not stay the execution of the judgment in any other case unless the trial court shall so order. The granting or refusal of such order shall rest in the sole discretion of the trial court. If such order is made, the clerk of the court shall issue a certificate stating that such order has been made. In cases where the defendant has been sentenced to death or life imprisonment he shall be confined in a state prison pending the decision upon his appeal." (Stats. 1927, p. 1062.) Under the old section, as we have already pointed out, the court could not have refused a certificate of probable cause under a proper showing. Under the new section, however, pursuant to the exclusive discretion attempted to be lodged in the court, the certificate was refused and a stay of execution was denied as well.

It is contended by respondent that this court, because of the present language of section 1243, cannot issue to petitioner a certificate of probable cause for the appeals he has perfected, or a stay of execution of the judgments pronounced against him. It is said that petitioner's present

fate is settled by the orders of the superior court and that this court is without power to prevent his incarceration in the penitentiary pending a determination of the appeals which he has taken. Petitioner insists, however, that the new section 1243, in its language attempting to confer upon the superior court the ''sole discretion'' contemplated by its terms, is unconstitutional, and that our power to issue certificates of probable cause, or to grant stays of execution, in criminal cases, exists in its pristine vigor. This assertion that the section violates the constitution is based upon two grounds. It is contended, first, that the enactment is obnoxious to the organic law for the reason that it attempts to confer upon a single individual an unbridled discretion, unregulated by rules for the manner of its exercise and uncontrolled by any limitations whatever. To this proposition *Yick Wo* v. *Hopkins,* 118 U. S. 356 [30 L. Ed. 220, 6 Sup. Ct. Rep. 1064, see, also, Rose's U. S. Notes], and other cases are cited. The second ground taken is that the section is unconstitutional because it impinges upon the provision of section 4 of article VI of the state constitution to the effect that the district courts of appeal shall have power to issue all writs ''necessary or proper to the complete exercise of their appellate jurisdiction.'' In determining the fate of the new section 1243 we shall give no attention to the first of these grounds, but shall limit our discussion to the merits of the second.

The right of petitioner to appeal from the judgments pronounced against him is secured to him by the constitution of the state (*Ex parte Hoge,* 48 Cal. 3; *In re Adams, supra*). Indeed, the right of appeal is so clearly the offspring of constitutional guaranty that the legislature is without power to provide for appeals beyond the scope of the language of the organic law (*People* v. *McKamy,* 168 Cal. 531 [143 Pac. 752]). Also, it is well worth while to observe that the power granted by the constitution to the courts of review of the state, that is, the power to issue writs in aid of the exercise of their appellate jurisdiction, is not a grant of original jurisdiction, but confers a part of the appellate jurisdiction itself. This is evident from the language of the grant, for the courts are to issue writs necessary or proper to the *complete* exercise of their appellate jurisdiction. These terms import, of course, that the exercise of

such jurisdiction is not complete without the issuance of appropriate writs whenever they are necessary or proper. This view finds ample support in the decided cases. The supreme court said in an early case arising under the constitution of 1849 (italics ours): ''The appellate power of the supreme court is given by the fourth section of the sixth article of the constitution, which expressly empowers this court to issue all writs and process necessary to the exercise of its appellate jurisdiction. The legislature, therefore, can pass no act impairing the exercise of *this appellate power*'' (*Haight* v. *Gay,* 8 Cal. 297 [68 Am. Dec. 323]). The constitution of 1849 provided that the supreme court should have power to issue writs of *habeas corpus* and ''all other writs and process necessary to the exercise of their appellate jurisdiction'' (art. VI, sec. 4). In construing this provision the court said: ''It is clear that under the old Constitution this court had no original jurisdiction except in cases of *habeas corpus*'' (*Tyler* v. *Houghton,* 25 Cal. 26). This view was in effect carried into another opinion of the court rendered a little later, but at the same term. The reference, in the quotation last made, above, to the ''old Constitution,'' was employed to distinguish the provision of the original constitution of 1849 from an amendment which had recently been adopted. In passing upon this amendment the court said in the later case: ''The Constitution as amended provides that the Supreme Court shall 'have power to issue writs of *mandamus, certiorari,* prohibition and *habeas corpus,* and also all writs necessary or proper to the complete exercise of its appellate jurisdiction.' (Art. VI, sec. 4.) This section of the constitution as it stood before it was amended, after enumerating the appellate powers of the supreme court, provided that it should have power to issue all writs and process necessary to the exercise of its appellate jurisdiction. The change effected by the amendment seems to have been designed to enlarge the powers of the court by conferring upon it original jurisdiction in the particulars specified in the fourth section of the sixth article. The language of this section is too clear and explicit to leave it open to any other construction, however much the court might be disposed to decline this new jurisdiction, in view of the inconveniences and embarrassments that may attend its exercise'' (*Miller* v. *Board of Supervisors,* 25 Cal. 93).

The same view is reflected in *People* v. *Loucks,* 28 Cal. 68, and it was carried forward in *Hyatt* v. *Allen,* 54 Cal. 353, the first case in which the question was discussed after the constitution of 1879 was adopted. In the opinion in the case last cited occurs a particular expression which shows graphically that the power to issue writs necessary or proper to the complete ·exercise of appellate jurisdiction is a part of that jurisdiction itself: "In the absence . . . of any specific prohibition in the Constitution, the court would undoubtedly have the power to issue all writs necessary to the complete exercise of its appellate ˙jurisdiction." The same idea was expressed in an opinion rendered a few years later: "The Constitution provides: 'The court shall also have power to issue writs of *mandamus, certiorari,* prohibition and *habeas corpus,* and all other writs necessary or proper to the complete exercise of its appellate jurisdiction.' The power to issue the writs specified, or any other writ, in a case where it may be necessary or proper to resort to it to secure the complete exercise of the appellate jurisdiction of the court, would exist had the Constitution been silent on the subject" (*People* v. *Jordan,* 65 Cal. 644 [4 Pac. 683]).

▇ It therefore appears that the right of appeal which is guaranteed to petitioner by the constitution, or which rests, in part, in the inherent power of the courts as tribunals of appeal, is not merely the right to take appeals, but, as well, the right to have from the appellate tribunal all writs which are necessary ˙or proper to the complete exercise of the jurisdiction set in motion by the perfecting of the appeals. It becomes material next, then, to determine whether the writ now demanded by petitioner—a writ of probable cause, which in effect is nothing more nor less than an order to stay execution—is one of the writs, issuable under an appropriate state of facts, which is necessary or proper to the complete exercise of appellate jurisdiction in a criminal case. So far as the mere rendition of judgment is concerned—the determination whether an affirmance or a reversal shall result—it may be said in a sense that an appellate tribunal has exercised its jurisdiction when its judgment has been pronounced and has become final; but that cannot be the complete exercise of jurisdiction which is contemplated by the constitution. The right of appeal, in all

the fullness with which we have seen that it is characterized, is guaranteed by the constitution to the appellant. It is he who is to be protected by the appellate tribunal. It surely cannot be said that the constitutional guaranty is safe-guarded if the court contents itself with a mere decision of the appeal, leaving the victorious party in the court be-low, in either a civil or a criminal case, to execute, in whole or in part and during the pendency of the appeal, the judgment which is assailed by it. The right of appeal would be but an empty thing if the appellate court could not, and if in proper cases it did not, afford to the appellant a means whereby the fruits of victory were fully preserved to him in the event of a reversal of the judgment against him. This doctrine has been continually applied in civil cases. In a recent decision, to which only we need refer, it was said, after the citation of earlier cases: ''The law appears to be well settled that if after an appeal the court below seeks to enforce the judgment from which the appeal is taken, the appellate court, in its discretion, may grant a special order restraining the action of such lower court in that regard'' (*Scott* v. *Larson,* 82 Cal. App. 46 [225 Pac. 248]). One instance of resort to the writ of *supersedeas* for the purpose of staying the execution of judgment in criminal cases, as pointed out in *People* v. *Ross,* 135 Cal. 59 [67 Pac. 13], and in a dissenting opinion in *In re Watts,* 197 Cal. 611, at page 621 [241 Pac. 886], was in the case of *People* v. *Durant,* 119 Cal. 54 [50 Pac. 1070]. In the dis-senting opinion mentioned it was said concerning *People* v. *Durant*: ''It was in fact an application to the court for a *supersedeas* in aid of its appellate jurisdiction, and was dealt with as such.'' In one of the cases just cited it was said in the majority opinion to which the dissent referred to above was filed: ''Our conclusion is that upon an appeal from a judgment imposing the death penalty a certificate of probable cause may be issued by the judge of the trial court or a justice of this court, the effect of which is to stay the execution of so much of the judgment as requires the imprisonment of the defendant in a state prison pending the hearing and determination of his appeal'' (*In re Watts, supra*). It is true that this conclusion of the court was reached in view of the provisions of section 1243 of the Penal Code—the decision was rendered· before 1927—but it

shows the justice of the idea that in proper cases a judgment of conviction in a criminal case should be stayed pending appeal.. It should be remarked in passing that it was not necessary for the court to base its determination upon. section 1243. A writ of *supersedeas* could have been issued, or an order staying execution of the 'judgment could have been made, pursuant to the language of the constitution, for such a writ and such an order amount to the same thing, as we have already seen, as a writ of probable cause. Indeed, under the rule stated in *Hyatt* v. *Allen, supra,* and in *People* v. *Jordan, supra,* either a *supersedeas* or a stay of execution could have been issued by the court irrespective of the provision in the constitution. In addition to the expressions in these two cases it has been said in a much later opinion that "the power to issue the writ of *supersedeas* is inherent in an appellate court" (*In re Graves,* 62 Cal. App. 168 [216 Pac. 386]).

It is insisted by respondent that it can make no difference to petitioner whether he be confined in the county, jail or in the penitentiary pending the hearing of his appeals, especially as if he be sent to the latter institution he will, during the consideration of his appeals, be amassing credits against the debit of his conviction in case of an affirmance of the judgments. The rights of an appellant under such circumstances, however, are predicated on the possibility of a reversal of the judgment which has been pronounced against him. But we forbear further to answer the contention of respondent. It is effectually met by a decision of the supreme court, in the following quotation from an opinion rendered by the chief justice, acting alone, in *In re Hoge,* 48 Cal. 6: "The right to appeal to the supreme court is guaranteed by the constitution to the prisoner, and is as sacred as the right of trial by jury. It is one of the means the law has provided to determine the question of his guilt or innocence. Upon such an appeal, the ultimate question is nearly always as to the validity of the judgment under which the prisoner is to suffer, and it is certainly not consonant to our ideas of justice, if it can be prevented by legal means, that even while the question of guilt or innocence is yet being agitated in the form of an appeal the prisoner should be undergoing the very punishment and suffering the very infamy which it was the

lawful purpose of the appeal to avert. It would be somewhat akin to a practice of punishing the accused for his alleged offense while the jury was yet deliberating upon the verdict'' (*In re Adams, supra*). It is true that *In re Hoge* had to do with an application for admission to bail, which, of course, contemplated the enlargement of the petitioner from all imprisonment. In *In re Adams*, however, the court was concerned with an application for a writ of probable cause, and the quotation from the earlier case was introduced by the statement: ''The case of *Ex parte Hoge* . . . was an application for admission to bail pending appeal— the giving of bail being, as the law then stood, the only mode of staying execution except in capital cases, and all that was said by Chief Justice Wallace in deciding that case is, in the changed condition of the law, fully applicable here.'' The court ordered ·the issuance of a writ of probable cause.

█ We cannot avoid the conclusion that, strictly speaking, section 1243 of the Penal Code, as it stood from 1874 to 1927, did not confer jurisdiction upon the supreme court or upon the district courts of appeal to issue writs of probable cause, or at least to issue its equivalents, and that the section, as amended in the latter year, cannot operate to deprive those courts of their ancient jurisdiction, or discharge them from their duty to petitioners, in proper cases, to issue writs of *supersedeas* or to make orders staying executions. It is only by the exercise of such a jurisdiction that the courts can properly safeguard the right of appeal guaranteed by the constitution. ''The legislature . . . can pass no act impairing the exercise of this appellate jurisdiction'' (*Haight* v. *Gay, supra*). ''*Quo warranto* was a case at law; it afforded the legal remedy for the usurpation [*sic*] of an office; and we think this court retains jurisdiction of the *case*, notwithstanding the legislature may have changed the procedure, enlarged the remedy, and given it a new name. To hold otherwise would be to admit a power in the legislature to abridge our jurisdiction, and take from parties the right of appeal, by the easy device of a change of procedure, in many cases, where the right and jurisdiction are unquestioned'' (*People* v. *Perry*, 79 Cal. 105 [21 Pac. 423]). ''·Jurisdiction . . . having been conferred on the superior court by the Constitution, such jurisdiction

could not be taken away or abridged by the legislature, and a statute existing at the time the Constitution was adopted conferring jurisdiction on some other tribunal was superseded by such constitutional provision, so far, at least, as it could be held to have conferred exclusive jurisdiction upon such tribunal'' (*People* v. *Bingham*, 82 Cal. 238 [22 Pac. 1029]). ''The courts of this state derive their powers and jurisdiction from the Constitution of the state. The constitutional jurisdiction can neither be restricted nor enlarged by legislative act. An attempt to take away from the courts judicial power conferred upon them by the Constitution, or to impose upon them judicial powers not granted or authorized to be granted by the Constitution is void'' (*Pacific Telephone Co.* v. *Eshleman*, 166 Cal. 640 [Ann. Cas. 1915C, 822, 50 L. R. A. (N. S.) 652, 137 Pac. 1119], in a concurring opinion at page 690). ''Concededly the right of appeal from the judgment of an inferior to a higher court must be found either in the state's Constitution or statutes, and it is the settled rule of law that if the right of appeal is constitutionally granted in any given case such right cannot be destroyed nor delimited by legislative enactment'' (*In re Sutter-Butte By-Pass Assessment*, 190 Cal. 532 [213 Pac. 974]).

Respondent contends that petitioner's remedy is by application for a writ of mandate to compel the issuance of a writ of probable cause by the superior court. We think not. Petitioner asks this court to exercise a jurisdiction reposed in it by the constitution, or inherently existing in it, and we think such an application proper. We are not asked to pass upon or to review the action of the superior court.

Our next labor is to inquire whether petitioner shows a proper case for the issuance of the writ or order for which he asks. To apply the test prescribed in *In re Adams, supra*, do petitioner's appeals present a case that is debatable, a case upon which there may be an honest difference of opinion, or are they clearly and palpably frivolous and vexatious? Whatever may be our conclusion upon the actual merits of the appeals when finally we come to a disposition of them, these are the questions to be answered now.

Petitioner's application shows that, while he was convicted of the crime of assault with a deadly weapon in two cases, apparently tried together, the charge against him in each was the crime of assault with intent to murder. It also appears that the convictions resulted upon a second trial of petitioner, the jury apparently having disagreed upon the first.

With this preliminary statement we set forth in full certain allegations of the petition:

"That the questions raised on the aforesaid appeal of this petitioner present to the District Court of Appeal a case that is debatable. That said appeal is not frivolous or vexatious. That said appeal presents questions upon which there may be an honest difference of opinion.

"Your petitioner respectfully represents that by reason of the nature of the evidence presented at the trial of the above mentioned criminal case, wherein it was shown that defendant did not precipitate or start the altercation which resulted in the shooting; that this petitioner was not the aggressor but was set upon and badly beaten by from three to five people; that this petitioner during all of said altercation up to the time when the shots were fired continually retreated, and by reason of other facts and circumstances brought out in evidence in this case, there is room for an honest difference of opinion as to whether the evidence presented is sufficient to justify or support the verdict of guilty.

"This petitioner further respectfully represents that the failure of the court to give certain instructions and particularly to instruct the jury as to their right to find the defendant guilty of simple assault, an offense necessarily included in the offense of assault with intent to murder, with which the defendant was charged, presents a debatable question of law upon which there may and can be an honest difference of opinion.

"That the filing of affidavits on the motion for a new trial, alleging that the trial judge was told during the progress of the trial by the bailiff in charge of the jury that while said jury was being housed under court order in a hotel, during the progress of the trial, and before the cause was submitted to said jury, that one of said jurors was telling other jurors that a witness for the

defense who testified at the first trial of the above mentioned cause received $5,000.00 for his testimony; and the refusal and neglect of the trial judge upon receiving such information to call same to the attention of counsel, to investigate the same, and if proven to declare a mistrial; in the face of the failure of the trial judge to deny by affidavit or otherwise the truth of the charge contained in the affidavit filed in support of defendant's motion for a new trial, constitute such misconduct on the part of the trial judge as to readily permit of an honest difference of opinion and debate as to whether or not such conduct on the part of the trial judge was prejudicial to the defendant's rights.

"Your petitioner further respectfully represents that the court instructed the jury as follows: 'The court instructs the jury that a person, on whom another is making a mere assault with the fists, not with intent to kill or to do great bodily harm, and who is not deceived as to the character of such assault, is not justified in taking life or using a deadly weapon in self-defense.' Your petitioner respectfully represents that the correctness of such instruction is debatable and that the giving of such instruction readily permits of an honest difference of opinion as to whether the lack of intent to kill or the lack to do great bodily harm, existing in the minds of one making an assault with the fists upon a defendant, is any criterion whatever of the right to engage in self-defense or whether the test is, what would a reasonable man situated as the defendant was situated and seeing what he saw, and knowing what he knew, have done under like circumstances. Your petitioner further represents to the court that the failure of the trial court to instruct the jury, as requested by the defendant, that filing of an indictment raises no presumption or contendment [sic] against the defendant and is no evidence against him, raises a debatable question and permits of an honest difference of opinion as to whether such refusal was prejudicial to the defendant in the light of all the other instructions given. Your petitioner respectfully represents that the failure on the part of the trial judge to instruct the jury, as requested by the defendant; in the instant case, that even though an assault is made upon the defendant only with the fists, still that the defend-

ant could resort to necessary self-defense if an ordinarily prudent and reasonable man situated as the defendant was, knowing what the defendant knew, and seeing what the defendant saw, would have believed that he was in imminent danger of great bodily injury from such an assault with the fists; raises a debatable question and permits of an honest difference of opinion as to whether or not in view of the facts and circumstances in evidence in the case, such instruction should not have been given.

"Your petitioner further respectfully represents that the cross-examination of the witness Kynett testified for the defendant and the remarks of the court at the conclusion of the examination of Police Captain Steckel, who testified in rebuttal for the People, raises a debatable question and permits of an honest difference of opinion as to whether or not such conduct on the part of the court was not prejudicial to the rights of the defendant and in violation of the provisions of Section XIX, Article 6, of the Constitution of the State of California, which prohibits judges from charging juries with respect to matters of fact.

"Your petitioner further represents that there are other and sundry debatable questions raised and issues which permit of an honest difference of opinion are also raised on the appeal taken by this petitioner in the above mentioned case. That by reason of all of the aforementioned grounds constituting said appeal, as well as divers and other grounds more fully appearing from the files and records in said appeal, it is apparent that said appeal is taken in good faith, presents debatable questions and permits of honest difference of opinion as to whether, during the trial of said cause, the rights of this defendant were prejudiced. That said appeal is not frivolous or vexatious, but on the contrary is brought in good faith and presents debatable questions to the District Court of Appeal."

These allegations as to what matters are presented by the appeals of petitioner are not controverted by respondent. The merits of petitioner's application were orally argued by a deputy district attorney and they were also debated in a brief filed by the attorney-general and the district attorney. In both oral argument and brief these officers have contented themselves with a presentation only of the questions arising upon the face of the petition,

which we have considered above. It is material also to observe that the deputy district attorney who participated in the oral argument said in the course of his remarks: "[W]e are not contending—and the attorney-general joins with me—but what there is under the law existing here some appearances which would seem to be within the rule laid down by Chief Justice Beatty [in *In re Adams, supra*], to which I have referred that the trial court could have, exercising reasonable judgment, come to the conclusion that a certificate [of probable cause] ought to be granted."

The transcript of the testimony and proceedings during the trial of petitioner are before us as a part of the record upon this application, as is also the transcript of the argument made on his motion for a new trial. In determining whether petitioner's appeals are frivolous we have not found it necessary to examine the transcript of the proceedings during the trial. Petitioner's opening brief in support of his appeals has not yet been filed and we have therefore been denied light from that source. We have, however, read carefully the transcript of the argument on motion for a new trial and it is that reading which has made it unnecessary for us to consider the transcript of the testimony. The allegations of the petition, designed to show that the appeals are not frivolous, are some of them not as full and satisfactory as could be desired, but they are amplified and enforced by the points presented and the argument made in support of the motion. Taking petition and argument together, we are fully apprised of the points to be made upon the appeal. We have no hesitation in declaring that the appeal is not frivolous. Several of the questions which we must finally decide are to our minds plainly arguable—debatable, to employ the language of *In re Adams, supra*—they are points concerning which an honest difference of opinion may be indulged. To this independent conclusion of our own is to be added the voluntary concession of the attorney-general and the district attorney that the superior court might properly have issued a certificate of probable cause. We have no hesitation in concluding that we should make an order staying the execution of the judgments against petitioner pending a determination of his appeals.

■ Some days after petitioner presented the application of which we have just made disposition he instituted the proceeding which at the head of this opinion is numbered Crim. 1746. This second proceeding is in the nature of an application for admission to bail pending a determination of petitioner's appeals. It was commenced by a petition general and formal in its terms, accompanied by various affidavits tendered in its support. None of these affidavits is controverted. Points and authorities were submitted in support of the petition, but no brief has been filed in opposition to it. The district attorney, who was present at the chamber hearing upon the application, stated that he had no authorities to present and that he had no objection to the making of an order admitting petitioner to bail.

Affidavits of seven of the members of the jury which convicted petitioner are presented with the petition. One of these jurors states that her intention was to find petitioner guilty under but one of the charges against him, that the sentence imposed upon petitioner was too severe, that if she had known the sentence was to be so severe she would not have voted petitioner guilty, and that some of the witnesses against petitioner were intoxicated at the time of the occurrences to which they testified. Another juror avers that the testimony against petitioner was conflicting and weak, that one of the other jurors told him that petitioner had paid a certain witness the sum of five thousand dollars to testify in his behalf, and that this statement served to strengthen the weak evidence against petitioner and influence the affiant juror to agree to a verdict of guilt. Yet another juror says that the fact that brought him mostly to the conclusion of petitioner's guilt was not the evidence as presented in court, that there was conversation in the jury-room to the effect that petitioner had paid some of his witnesses to testify in his behalf, and that this conversation was partly the cause of the agreement of the jury to the compromise verdict of guilt. The affidavits of the other four jurors show similar matters.

An affidavit of petitioner and affidavits of several physicians contain statements concerning the effect likely to be wrought upon petitioner's health by his imprisonment. The affidavits of the physicians show the result of various

examinations to which they have subjected petitioner, some of these having occurred before and some after his imprisonment began. There is a showing of various symptoms of petitioner and of certain complaints made by him as to his condition of body. The only resultant statements in the various affidavits are that since his incarceration his health has been seriously and dangerously impaired, that it is believed that his present condition and the injury to his health is such that it will be permanently and dangerously affected by further imprisonment, that petitioner's condition is detrimental and subject to serious consequences if not under proper surroundings and care and that he ought not to be subjected to unnecessary worry and hardships, that petitioner will suffer in his general health if compelled to close confinement, and that strain, either mental or physical, will be detrimental to petitioner's health.

The showing made by all these affidavits is utterly insufficient to support the petition for admission to bail. Such an application, made after appeal, should be allowed "only in cases where circumstances of an extraordinary character have intervened" (*Ex parte Marks,* 49 Cal. 680). "What is meant by 'circumstances of an extraordinary character' occurring after conviction was inquired by counsel at the argument. Obviously this question cannot be fully or satisfactorily answered by mere anticipation of possibilities. It might be that after conviction of a felonious homicide the supposed deceased was produced and seen to be alive; or it might be discovered that property, the subject of a supposed larceny, had all the time been in the possession of its owner and overlooked by his mistake. A variety of illustrations might be suggested of circumstances distinguishing a particular case from the general mass of other criminal cases, and appealing more or less strongly to the discretion of the court to admit the prisoner to bail, even after conviction. It is not pretended that any circumstances of an extraordinary character affecting the condition of the petitioners here have occurred since their conviction. None are asserted in the petition for the writ, nor were any such proven at the hearing. The circumstances suggested at bar, that some of the jurors had, since the trial, stated that they had become satisfied that they

committed a mistake in rendering their verdict against the accused is, of course, not entitled to the slightest attention" (*Ex parte Smallman*, 54 Cal. 35). The supreme court "ought not to admit to bail after a verdict of guilty, unless when circumstances of extraordinary character had intervened since the conviction" (*Ex parte Brown*, 68 Cal. 176 [8 Pac. 829]). As covering practically the same ground, see *Ex parte Smith*, 89 Cal. 79 [26 Pac. 638]; *Ex parte Turner*, 112 Cal. 627 [45 Pac. 571]; *Ex parte Hatch*, 15 Cal. App. 186 [114 Pac. 410]; *In re Wilkins*, 66 Cal. App. 754 [226 Pac. 964]; *People* v. *Eiseman*, 69 Cal. App. 143 [230 Pac. 669]; *People* v. *Ephraim*, 72 Cal. App. 479 [237 Pac. 801]; *In re Ephraim*, 73 Cal. App. 104 [237 Pac. 801].

There is nothing in the affidavits of the seven jurors which shows the intervention of any "circumstances" whatever since petitioner's conviction, except the mere making of the affidavits themselves, and that "circumstance" is palpably insufficient to meet the requirement prescribed in the cited cases, granting that these affidavits can be considered at all.

The only "circumstance" intervening since conviction, taking the entire case made by petitioner, is disclosed by some of the statements contained in the affidavits concerning the state of his health, but that showing is insufficient. "There is nothing in the case showing the intervention of any such extraordinary circumstance as would justify holding that the application was improperly denied by the judge of the trial court. The evidence does not show that there is such imminence of dangerous results to the life or health of the defendant as to obviously require his removal from the county jail at this time. Should more serious consequences of his confinement hereafter manifest themselves, and such as to render it proper that bail should be allowed, there is nothing to preclude another application for the purpose" (*Ex parte Turner, supra.*) For a review of the authorities upon the question of the effect of confinement upon health as requiring an admission to bail pending appeal, see *People* v. *Cornell*, 28 Cal. App. 654 [153 Pac. 726]. "Where the reasonable inference from the showing made is that there is only a fear that further confinement of the prisoner pending appeal will endanger his health or life, and not that there is imminent danger from further

confinement, bail should be denied'' (*People* v. *Eiseman, supra*). We have not made an exhaustive presentation of the authorities on this question for the reason that the counsel for petitioner, at the time of the hearing on the petition, conceded that the showing as to petitioner's state of health was not alone sufficient to entitle him to admission to bail.

Petitioner is granted a stay of execution of the judgments against him pending a determination of his appeals. He is denied admission to bail.

Craig, J., and Thompson (Ira F.), J., concurred.