## EDELMAN *v.* CALIFORNIA.

No. 85.  Argued November 19, 1952.—Decided
January 12, 1953.

*Emanuel Redfield* argued the cause for petitioner. *A. L. Wirin* and *Fred Okrand* filed a brief for petitioner.

*Philip E. Grey* argued the cause for respondent.  With him on the brief were *Ray L. Chesebro* and *Bourke Jones.*

Mr. Justice Clark delivered the opinion of the Court.

Petitioner stands convicted under § 647 (5) of the Penal Code of California, which provides in relevant part that "Every . . . dissolute person . . . [i]s a vagrant, and is punishable by a fine of not exceeding five hundred dollars ($500), or by imprisonment in the county jail not exceeding six months, or by both such fine and imprisonment." The conviction was affirmed by the Appellate Department of the Los Angeles County Superior Court in an order which recited that the appeal had been submitted without argument. A motion to recall the remittitur and vacate the judgment of the appellate court was denied without opinion after a full hearing before three judges. We granted certiorari because of serious constitutional questions raised as to the validity of the vagrancy statute and its application to the petitioner. 343 U. S. 955. However, on oral argument, doubts arose as to whether the federal questions were properly presented by the record. Accordingly, it is necessary at the outset to determine whether we have jurisdiction in this case.

Petitioner contends, first, that his conviction violates the Due Process Clause of the Fourteenth Amendment because the vagrancy statute is vague, indefinite and uncertain. The record indicates that this defense was not raised on trial but was presented for the first time as the fifth of petitioner's grounds of appeal, stated as follows: "5. Vagrancy statute is unconstitutional because vague and indefinite."

It is clear that this Court is without power to decide whether constitutional rights have been violated when the federal questions are not seasonably raised in accordance with the requirements of state law. *Hulbert* v. *City of Chicago,* 202 U. S. 275 (1906); *Mutual Life Ins. Co.* v. *McGrew,* 188 U. S. 291, 308 (1903). Noncompliance with such local law can thus be an adequate state ground

for a decision below. Aside from state law regarding the scope of review in cases such as this one, we note that California permits affirmance in criminal cases where the appellant fails to appear.[1] It follows that the question whether the vagrancy statute is invalid under the Fourteenth Amendment is not properly before us.

The argument that petitioner's rights under the Equal Protection Clause of the Fourteenth Amendment were infringed by discriminatory law enforcement merits only brief comment. The evidence adduced on trial showed at most that the vagrancy statute is not used by the Los Angeles authorities in all of the cases in which it might be applicable. Doubtless recognizing the necessity of showing systematic or intentional discrimination, petitioner made an offer of proof phrased as follows, "I want to show by the police records that there are thousands and thousands of individuals in this city that are walking around that have committed many more offenses than this defendant that have never been charged with vagrancy." This offer was made in connection with a subpoena addressed to the local police records section. On motion of the city attorney the subpoena was quashed on the ground that the accompanying affidavit did not comply with the requirements of state law. Since California law determined this action, there is no federal question preserved for review in this aspect of the case. *Hedgebeth* v. *North Carolina,* 334 U. S. 806 (1948).

Petitioner urges, finally, that he was deprived of notice and opportunity to have a hearing in the appellate court. A careful study of the record discloses these facts: On

---

[1] See *People* v. *Garza,* 86 Cal. App. 97, 260 P. 390 (1927); Rule 8, Rules on Appeal from Municipal Courts and Inferior Courts in Criminal Cases, as amended to January 6, 1947; Deering's Cal. Penal Code, 1949, § 1253; *People* v. *Sukovitzen,* 67 Cal. App. 2d 901, 155 P. 2d 406 (1945).

December 13, 1949, one day after sentence was imposed, the attorney who represented petitioner during the nine-day trial in Los Angeles Municipal Court filed written notice of appeal in that court. An application for substitution of attorneys was there filed and granted on February 7, 1950. The substituted attorney thereafter appeared in the trial court at hearings on the settlement of the statement on appeal. Preparation of that statement was a lengthy process, not concluded until June 18, 1951, when it was allowed and settled in final form by the trial judge.[2]

After the Appellate Department affirmed the conviction, petitioner filed a motion to "Recall the Remittitur and to Vacate the Judgment" of the Appellate Department on the ground that its judgment "was occasion[ed] by the inadvertence, and mistake of fact of the defendant and of the clerk of the above entitled court, and on the incomplete presentation of all the facts and law by the defendant . . . ." In a supporting affidavit, petitioner's original attorney stated that he received notice that the appeal had been set for argument; that he then went to the office of the Appellate Department clerk and advised the person attending the desk that the substituted attorney was the proper person to notify, and was assured that petitioner's then counsel would be notified of the date of the hearing. Substituted counsel filed an affidavit stating that he had not received such notice.[3]

---

[2] Apparently the statement was agreed upon some time before June 18, judging from the docket entry of November 6, 1950, "Defendant's Counsel to engross Statement on Appeal," and an affidavit dated March 7, 1951, showing service of the engrossed statement on substituted counsel.

[3] Rule 3 (b) of Revised Appellate Department Rules provides, in part, that "Failure of the clerk to mail any such notice [of hearing] shall not affect the jurisdiction of the Appellate Department."

The motion to recall the remittitur and vacate the judgment of the Appellate Department asserted no deprivation of any federal constitutional right. Further, the motion sought what, under California law, is an extraordinary remedy, not available where the court had "jurisdiction to render the judgment complained of and it does not affirmatively appear that it was the result of fraud, imposition or misapprehension of facts." *People* v. *Stone,* 93 Cal. App. 2d 858, 861, 210 P. 2d 78, 80 (1949) and cases there cited; 23 Calif. L. Rev. 354.[4] Respondent has also suggested that state habeas corpus was available to petitioner to test the constitutionality of his restraint. This is borne out by *In re Bell,* 19 Cal. 2d 488, 122 P. 2d 22 (1942), in which the State Supreme Court decided that California habeas corpus may be used to test the constitutionality of a statute under which the applicant has been convicted. The writ is, in fact, there stated to be the only remedy available for this purpose where the applicant has exhausted his remedy by appeal. Under California law, habeas corpus can also be used to raise other constitutional objections to criminal proceedings, such as deprivation of right to counsel. *In re Bell, supra,* 19 Cal. 2d, at 501, 122 P. 2d, at 30. The denial of petitioner's motion, therefore, rested on an adequate state ground, his choice of the wrong remedy under local law. *Woods* v. *Nierstheimer,* 328 U. S. 211, 214 (1946). This is not a case in which there is serious doubt about the nature of the ground on which the decision below rested. Cf. *State Commission* v. *Van Cott,* 306 U. S. 511 (1939); *Minnesota* v. *National Tea Co.,* 309 U. S. 551 (1940); *Herb* v. *Pitcairn,* 324 U. S. 117 (1945). We are thus without power

---

[4] See *People* v. *McDermott,* 97 Cal. 247, 32 P. 7 (1893), in which a motion to recall the remittitur of the State Supreme Court was denied, clearly on state grounds, under circumstances similar to those in the instant case.

to decide petitioner's claims on the merits, whatever may be their appeal. The writ was improvidently granted and must be dismissed. *Stembridge* v. *Georgia,* 343 U. S. 541 (1952).

*It is so ordered.*

MR. JUSTICE JACKSON concurs except that he thinks it is not material whether California will grant habeas corpus in this case. True, the petitioner's original appeal to the California court sought to raise a federal question. That was not passed upon because the appeal was dismissed for default. Whether the default should be considered excusable by any court is left highly in doubt by the record. At all events, in asking relief from it there was no claim that to take a default under such circumstances is forbidden to a state court by the Constitution of the United States, and such a claim would be frivolous if made. Hence, the petitioner is out of court for reasons of state law and practice, and the writ of certiorari should be dismissed.

MR. JUSTICE BLACK, with whom MR. JUSTICE DOUGLAS concurs, dissenting.

The petitioner was convicted of "vagrancy" in the Municipal Court of Los Angeles. He was given a 90-day jail sentence. The conviction for vagrancy was based primarily on what he had said in public speeches made in a Los Angeles park. He appealed to the Appellate Department of the Superior Court which was the highest court in California in which he could obtain review. One of a number of grounds of appeal was that the vagrancy statute was unconstitutional because vague and indefinite. The rules of the California appellate court specifically require that an appellant or his attorney of record shall be mailed notice of the date on which his appeal will be heard. California admits that

no such notice was given petitioner or his counsel of record on appeal and that neither knew the case was set for hearing. As a result neither was present when the case was called in the appellate court. Consequently that court affirmed the jail sentence by default without argument or consideration of the merits of the conviction or the constitutionality of the vagrancy statute. Immediately after discovery of this default affirmance petitioner moved to vacate the action. With full knowledge of all the foregoing facts, the appellate court denied the motion. Petitioner has thus had his constitutional contentions rejected and his conviction affirmed without notice and an opportunity to be heard through himself or counsel. In California, the right of appeal "is guaranteed by the Constitution to the prisoner, and is as sacred as the right of trial by jury. It is one of the means the law has provided to determine the question of his guilt or innocence." *Ex parte Hoge,* 48 Cal. 3, 6; *In re Albori,* 95 Cal. App. 42, 50–51, 272 P. 321, 324–325. Under these circumstances I agree with petitioner that refusal to give him or his counsel an opportunity to be heard in the appellate court denied him the due process of law guaranteed by the Fourteenth Amendment. See *In re Oliver,* 333 U. S. 257, 273; *Cole* v. *Arkansas,* 333 U. S. 196, 201; *Powell* v. *Alabama,* 287 U. S. 45, 68.[1] Such a denial of due process cannot be justified by the state on any "adequate non-federal ground." For this reason I would not dismiss the certiorari but would reverse or vacate the appellate court's judgment.

The Court rests its dismissal on a belief that the petitioner can still test the validity of his conviction in a

---

[1] In *Cochran* v. *Kansas,* 316 U. S. 255, 258, we held that Kansas denied Cochran equal protection of the laws in refusing him privileges of appeal it afforded to others. To the same effect, *Doud* v. *United States,* 340 U. S. 206.

habeas corpus proceeding in the California state courts. And the Court's belief as to availability of a state remedy is buttressed by a presumption that a state will not deny a remedy for deprivation of a constitutional right such as here alleged. *Mooney* v. *Holohan, Warden,* 294 U. S. 103, 113. Moreover, should California refuse to grant petitioner a remedy to test the constitutionality of the Vagrancy Act, he could then seek relief in a United States district court. See *Moore* v. *Dempsey,* 261 U. S. 86. But my doubt about the availability of an adequate state remedy leads me to conclude that the wiser course here would be to vacate the appellate court's judgment for a clarification of the bases of its action. See *State Tax Commission* v. *Van Cott,* 306 U. S. 511; cf. *Herb* v. *Pitcairn,* 324 U. S. 117. For even superficial examination of the California vagrancy statute and petitioner's trial under it will reveal the gravity of the constitutional questions which petitioner urges and which the appellate court left unconsidered and undecided.

Subsection 5 of § 647 of the Penal Code of California provides that "Every idle, or lewd, or dissolute person, or associate of known thieves . . ." is a vagrant, punishable by fine of not more than $500 or by imprisonment of not more than six months, or both.[2] Petitioner was charged with and convicted only of being a "dissolute" person. The ambiguity and consequent broad reach of this crime of "dissoluteness" is patent. The trial court's efforts to reduce the ambiguity greatly increased it. The judge told the jury that petitioner was not accused of "any violation of any particular act" but with being a person of "a certain status" or "in a certain condition." His "character" alone was involved, since "vagrancy is a status

---

[2] A mere reading of the California vagrancy statute is sufficient to show its similarity to a New Jersey law held invalid for vagueness and ambiguity in *Lanzetta* v. *New Jersey,* 306 U. S. 451.

or a condition and it is not an act." Petitioner was therefore to be tried for a subjective "status," not the easiest thing in the world to prove or disprove. And petitioner's difficulty was not made easier by these additional statements to the jury:

> "Vagrancy is a continuing offense. It differs from most other offenses in the fact that it is chronic rather than acute; that it continues after it is complete and subjects the offender to arrest at any time before he reforms. One is guilty of being a vagrant at any time and place where he is found, so long as the character remains unchanged, although then and there innocent of any act demonstrating his character. . . . His character, as I said before, is the ultimate question for you to decide."

The dictionary definition of dissolute given to the jury by the court described a crime of such nebulous amplitude that no person could know how to defend himself. The court said:

> "Now, dissolute is defined as 'loosed from restraint, unashamed, lawless, loose in morals and conduct, recklessly abandoned to sensual pleasures, profligate, wanton, lewd, debauched.' Now, the word 'dissolute', as you see from this definition, covers many acts not necessarily confined to immorality. Other laxness and looseness and lawlessness may amount to dissoluteness."

During a nine-day trial the jury heard a number of witnesses who patently did not like what petitioner said in the many speeches he had been making in the park. There seems to be no doubt that his speeches chiefly involved political or economic questions and included attacks on the local police force. One witness who testified that petitioner had publicly accused him of being a thief also swore that he had heard petitioner advocate "force

and violence, stating that a change could not be brought about except by bullets." Other hostile witnesses testified to his use of intemperate language. A policeman swore that petitioner had prophesied that he "would not be given a fair trial"—a prophecy which I fear this record viewed as a whole does not entirely refute. There was also evidence that petitioner had solicited funds to aid him in carrying on his publicity work, and to help pay for his defense in numerous cases that were instituted against him in the municipal court. In one of these cases he had been charged with defacing a park bench of thick concrete by standing on it to make a speech.

It would seem a matter of supererogation to argue that the provision of this vagrancy statute on its face and as enforced against petitioner is too vague to meet the safeguarding standards of due process of law in this country. This would be true even were there no free speech question involved. And in that field we have said,

> "It is settled that a statute so vague and indefinite, in form and as interpreted, as to permit within the scope of its language the punishment of incidents fairly within the protection of the guarantee of free speech is void, on its face, as contrary to the Fourteenth Amendment." *Winters* v. *New York,* 333 U. S. 507, 509.

The free speech question was so obviously involved in this vagrancy prosecution that the court charged the jury at length about free speech. He even submitted to them the question whether petitioner's speech constituted "a clear and present danger. . . ."

I adhere to the view that courts should be astute to examine and strike down dragnet legislation used to abridge public discussion of "views on political, social or economic questions." *Schneider* v. *State,* 308 U. S. 147, 161, 163.